UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| P2I LTD.,<br><br>        Plaintiff,<br><br>    v.<br><br>FAVORED TECH USA CORPORATION, et al.,<br><br>        Defendants. | Case No. 23-cv-01690-AMO<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 70, 71 |

This is a patent infringement and trade secret misappropriation case involving electronics surface coatings. Before the Court are two motions to dismiss from Defendants. The matters are fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for August 15, 2024, was vacated. *See* Civ. L.R. 7-1(b). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby **GRANTS** the motions to dismiss, for the following reasons.

I.  **BACKGROUND**[1]

Plaintiff P2i, Ltd. ("P2i"), is a developer and provider of liquid repellent nanotechnology for mass manufacturing. Second Am. Compl. (ECF 65, "SAC") ¶ 28. This includes, for example, a coating technology to protect mobile phones from water and corrosion damage. SAC ¶ 5. P2i is a limited company formed under the laws of the United Kingdom, with its principal place of business in Oxfordshire, United Kingdom. SAC ¶ 13.

---

[1] The Court accepts factual allegations in the complaint as true, *Health Freedom Def. Fund, Inc. v. Carvalho*, 104 F.4th 715, 722 (9th Cir. 2024), and "construe[s] the pleadings in the light most favorable to the nonmoving party," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Defendant Favored Tech USA Corp. ("Favored Tech USA") is a California corporation with its principal place of business in Cupertino, California. SAC ¶ 14. Defendant Jiangsu Favored Nanotechnology Co., Ltd. ("Jiangsu Favored"), a Chinese company, is the parent of subsidiary Favored Tech USA. SAC ¶ 6. The Court refers to Favored Tech USA and Jiangsu Favored together as "Favored" or "Favored Defendants."

Defendant GN Audio USA, Inc. ("GN Audio") is a Delaware corporation with its principal place of business in Lowell, Massachusetts. SAC ¶ 16. It is a subsidiary of non-party GN Hearing, an entity that previously contracted with P2i. SAC ¶ 11.

### A. The Patents

P2i is the assignee of U.S. Patent Nos. 8,389,070 ("the '070 Patent") and 11,041,087 ("the '087 Patent") (collectively, the "P2i Patents"). SAC ¶ 27.

The '070 Patent generally covers methods of applying a coating to electronics. SAC ¶ 24. The '070 Patent encompasses, inter alia, "a method for depositing a polymeric material onto a substrate, including introducing a monomeric material in a gaseous state into a plasma deposition chamber to allow a polymeric layer to form on the surface of the substrate." SAC ¶ 24. The '070 Patent issued on March 5, 2013. SAC ¶ 23.

The '087 Patent generally covers electronics with a particular polymeric coating. SAC ¶ 26. The '087 Patent is directed to, inter alia, "an electronic or electrical device or electronic or electrical component thereof including a protective cross-linked polymeric coating on a surface of the device or component." SAC ¶ 26. The '087 Patent issued on June 22, 2021. SAC ¶ 25.

### B. Patent Infringement

Favored infringes the P2i Patents by making, using, and selling electronic or electrical devices or components thereof which include P2i's patented coating technology as encompassed by claims of the '087 Patent, and applying said coating using the '070 Patent's method. SAC ¶¶ 35-46. Favored imports these infringing products into the United States. *See, e.g.*, SAC ¶¶ 43, 102, 104.

Favored has also engaged in induced and contributory infringement of the '087 Patent by supplying products – which include Favored's infringing coating – to customers including GN

Audio.  SAC ¶¶ 97, 273.  Favored also contributorily infringes the '087 Patent by providing GN Audio with electrical components, knowing them to be especially made or adapted for practicing the invention of the '087 Patent.  SAC ¶ 254.

GN Audio directly infringes the P2i patents by making, using, selling, and offering for sale electronic or electrical devices that include P2i's coating technology as encompassed by one or more claims of the '087 Patent and manufactured using the infringing method encompassed by one or more claims of the '070 Patent, and importing the manufactured products into the United States.  SAC ¶¶ 242, 263.

### C. Trade Secret Misappropriation

P2i developed and maintained a body of confidential and proprietary information related to its business and manufacturing.  *See, e.g.*, SAC ¶¶ 162-66, 203, 219-22, 226, 239.  This information includes business strategies relating to market advancements, pricing information, target demographics and strategies to secure new customers, formulas, process parameters, and technical specifics relating to the coatings manufactured by P2i and the methods by which they are deposited.  SAC ¶ 293.  P2i considered this information secret and protected it.  SAC ¶¶ 285-87.

P2i allowed certain employees limited access to its trade secrets.  SAC ¶¶ 158-167, 185, 192, 286, 288-90.  Favored later obtained these trade secrets from former P2i employees.  SAC ¶¶ 198-223, 303-306, 309, 311, 314-15, 318-20.  Despite knowing of the former P2i employees' confidentiality obligations to P2i, Favored misappropriated P2i's trade secret information, including by using it as the knowledge base on which Favored developed competing polymer coatings technology.  SAC ¶¶ 198-99.  Using P2i's trade secrets, Favored rapidly advanced its research and development efforts.  *Id.*

### D. Procedural History

P2i filed its original complaint on April 7, 2023.  ECF 1.  Favored and GN Audio filed motions to dismiss on June 20, 2023.  ECF 25, ECF 26.  In response, P2i filed its First Amended Complaint ("FAC") as of right.  ECF 39; *see* Fed. R. Civ. Pro. 15(a)(1)(B).  Favored and GN Audio moved to dismiss the FAC (ECF 40, ECF 41), which P2i opposed (ECF 47).  At the hearing on the motion, the Court dismissed the FAC in its entirety on three bases: (1) P2i failed to

sufficiently identify any infringing products to support any of its patent-infringement claims; (2) P2i failed to sufficiently identify the trade secrets allegedly misappropriated, and the claim appeared to be time barred; and (3) P2i failed to identify an independently wrongful act necessary to maintain a tortious interference claim.  *See* ECF 60 ("Hearing Tr.").

In the SAC, P2i abandons the tortious interference cause of action and advances the following claims:

1. Infringement of U.S. Patent No. 8,389,070;
2. Infringement of U.S. Patent No. 11,041,087; and
3. Misappropriation of trade secrets under the Defend Trade Secrets Act of 2016 ("DTSA").

## II. DISCUSSION

Defendants move to dismiss portions of the SAC for failure to state a claim.  ECF 70, ECF 71.  Defendants seek dismissal with prejudice of the DTSA claim as well as several, but not all, of P2i's theories of patent infringement.

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Rule 8 requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under Rule 12(b)(6), dismissal "is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007).

"When considering a motion to dismiss," courts "accept 'as true all well-pleaded allegations of fact in the complaint' and construe[s] them in the light most favorable to the non-moving party."  *Karasek v. Regents of the Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020)

(citation omitted). "[A]llegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," however, need not be "accept[ed] as true." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation omitted). As a general matter, the court should limit its Rule 12(b)(6) analysis to the contents of the complaint, although it "can consider a document on which the complaint relies if the document is central to the plaintiff's claim, and no party questions the authenticity of the document." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The court may also consider matters that are properly the subject of judicial notice, *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001), exhibits attached to the complaint, *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced extensively in the complaint and documents that form the basis of the plaintiff's claims, *No. 84 Emp'r-Teamster Jt. Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003).

### B. Trade Secret Misappropriation

P2i alleges trade secret misappropriation under the Defend Trade Secrets Act ("DTSA") by the Favored Defendants, not GN Audio. "To state a claim for trade secret misappropriation under the DTSA . . . , a plaintiff must allege that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (citations and internal quotation marks omitted).

Favored challenges the sufficiency of P2i's DTSA allegations on the following bases: (1) whether P2i sufficiently describes its purported trade secrets, (2) whether P2i's trade secret claims are time-barred, and (3) whether P2i alleges an "act in furtherance of" trade secret misappropriation in the United States. The Court finds that dismissal is appropriate on the first two bases, discussed in turn below, and the Court does not reach the third argument for dismissal.

#### 1. P2i insufficiently described its purported trade secrets

"[T]he definition of what may be considered a 'trade secret' is broad." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) (citation omitted). "[T]he definition of trade secret consists of three elements: (1) information, (2) that is valuable because it is

unknown to others, and (3) that the owner has attempted to keep secret." *Id.* A plaintiff bears the burden of proving ownership of a trade secret, including both identifying the trade secret and showing the trade secret exists. *Id.* at 658. Although a plaintiff "need not 'spell out the details of the trade secret,'" *Autodesk, Inc. v. ZWCAD Software Co.*, No. 14-cv-01498-EJD, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015) (internal quotation omitted), a plaintiff "should describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." *InteliClear*, 978 F.3d at 658 (internal quotation marks and citation omitted; emphasis in original). In other words, a plaintiff must describe the trade secret with sufficient particularity to permit the defendant "to ascertain at least the boundaries within which the secret lies." *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (citations omitted). Identifying trade secrets with sufficient particularity is important because defendants need concrete identification to prepare a rebuttal. *InteliClear*, 978 F.3d at 658.

   At the hearing on Defendants' motions to dismiss the FAC, the Court dismissed P2i's DTSA claim with leave to amend, finding the allegations too high level to provide effective notice regarding the boundaries of the purported trade secrets. Hearing Tr. at 24. In the SAC, P2i still alleges rampant theft of sweeping categories of trade secrets, including "the specific chemical identity of reaction precursors; operational parameters for coating processes including pulse rate, pressure and temperature, and reaction times; and valuable internal business documents, including customer lists and sales strategies," SAC ¶ 10, as well as "internal and proprietary knowhow and negative know-how . . . P2i's customer lists, business strategy plans, implementation procedures, operating parameters, research and development efforts, and specific customer price information," *id.* ¶ 199. *See also id.* ¶¶ 166, 185, 192 (alleging more categories of trade secrets its former employees had access to, without clearly accusing Favored of misappropriating those). Most specifically, P2i alleges that its trade secrets include (1) "business strategies regarding the prioritization and sequencing of research and development projects"; (2) "the identity and quality controls imposed on suppliers of reactants and equipment used in P2i's processes"; (3) "confidential information pertaining to the specific chemical identity of reaction precursors";

6

1  and (4) several "proprietary operating parameters[.]"  *Compare* SAC ¶ 293 *with* FAC ¶ 330 (same,
2  unchanged in SAC).

3  Similarly general allegations are consistently found too high-level to provide effective
4  notice of the boundaries of the alleged trade secret.  *See, e.g.*, *CleanFish, LLC v. Sims*, No. 19-CV-
5  03663-HSG, 2020 WL 1274991, at *9 (N.D. Cal. Mar. 17, 2020) (finding "detailed customer lists,
6  customer purchasing data, customer sales figures and other related customer purchasing analysis
7  and trends" too general to identify a trade secret); *Space Data Corp. v. X*, No. 16-CV-03260-BLF,
8  2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (plaintiff's purported trade secrets, such as
9  "data on the environment in the stratosphere" and "data on the propagation of radio signals from
10 stratospheric balloon-based transceivers" too high-level to identify a trade secret); *Becton,*
11 *Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-CV-00933-MMC, 2018 WL 2298500, at *3
12 (N.D. Cal. May 21, 2018) (allegations of "design review templates," "fluidics design files," and
13 "source code files" were too broadly stated to identify trade secrets); *cf. Alta Devices, Inc. v. LG*
14 *Elecs., Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018) (allegations describing methods of "high
15 throughput thin-film deposition; epitaxial lift-off of the thin-film; and GaAs substrate maintenance
16 and re-use" sufficiently particular to identify trade secrets).  Even the most specific allegations
17 here merely provide too general an overview of P2i's purported trade secrets, and they are
18 insufficient to describe a trade secret.

19 P2i relies on *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653 (9th Cir. 2020),
20 for the premise that the SAC sufficiently defines the trade secrets.  *InteliClear* is distinguishable
21 on several grounds.  First, InteliClear involved summary judgment, not merely the sufficiency of
22 pleadings, as is the circumstance here.  *Id.* at 656-57; *see also* Opp. at 5 n.3 (acknowledging
23 *InteliClear*'s procedural posture).  Second, *InteliClear* involved a specific software
24 misappropriated by the defendant and the plaintiff's detailed proffer of evidence specifying which
25 portions of the software constituted trade secrets.  *Id.* at 658-59.  Moreover, *InteliClear* reiterated
26 that "using 'catchall' phrases or merely identifying categories of information" would be
27 insufficient, but that the detailed evidence presented in support of summary judgment cleared that
28 hurdle.  *Id.* at 659.  P2i, by contrast, fails to satisfy the threshold requirement to identify the secrets

United States District Court
Northern District of California

7

1   with specificity, accusing Favored of misappropriating not only an ill-defined nano-coating

2   process, but also a host of broad business, operational, and research-and-development information

3   as well.  *See, e.g.*, SAC ¶¶ 10, 166, 185, 192, 199, 201, 219-22, 226, 239.  P2i's pleading falls

4   short of the specificity standard for a trade secret.

5         Moreover, as Favored notes, many of these categories – such as "operational parameters

6   . . . including pulse rate, pressure and temperature, and reaction times," and "chemistries of

7   monomers and cross-linkers" – are not trade secrets because they are publicly available, as

8   evidenced at least by the disclosures in P2i's asserted patents.  *See, e.g.*, '070 Patent (ECF 65-1) at

9   2:8-32, 5:3-6:34 (parameters), 3:22-4:24 (monomer).  These allegations regarding public

10  information cannot support a trade secret misappropriation claim.  *Attia v. Google LLC*, 983 F.3d

11  420, 426 (9th Cir. 2020) ("[D]isclosure of a trade secret in a patent application extinguishes the

12  information's trade secret status."); *see also Space Data*, 2017 WL 5013363, at *2 (granting

13  motion to dismiss in part because plaintiff had "not made clear which aspects of its technology

14  and other information are 'part of patents and pending patent applications,' if any, and which are

15  secret").

16        For these reasons, the Court dismisses the trade secret misappropriation claim.  P2i fails to

17  identify its purported trade secrets with sufficient specificity, and many of its purported secrets are

18  publicly known.  The Court turns next to Defendants' argument that P2i's trade secret claim is

19  time-barred because resolution of that issue informs whether the claim can be amended.

20        **2.**     **P2i's trade secret claim is time-barred**

21        Under the DTSA, P2i was required to bring its claim no later "than 3 years after the date

22  on which the misappropriation . . . is discovered or by the exercise of reasonable diligence should

23  have been discovered."  18 U.S.C. § 1836(d).  "Dismissal at the pleading stage on statute-of-

24  limitations grounds ordinarily is improper unless it is apparent from the face of the complaint that

25  the claim is time-barred."  *ABB Turbo Sys. AG v. Turbousa, Inc.*, 774 F.3d 979, 985 (Fed. Cir.

26  2014) (citations and quotation marks omitted).  "[T]o approve dismissal on timeliness grounds,"

27  the complaint must allege "facts making it apparent that [plaintiff] discovered, or by the exercise

28

of reasonable diligence should have . . . discovered, the alleged misappropriations at least three years before" the statute of limitations ran. *Id.* at 985.

P2i made the most significant amendments in the SAC in response to the Court's suggestion that it needed to provide "more detail regarding the discovery of the trade secret misappropriation" to determine whether the claim was barred by the three-year statute of limitations. Hearing Tr. at 24. In the SAC, P2i again alleges rampant theft of its trade secrets by three of its former employees around 2016-2017 (*see generally* SAC ¶¶ 158-228), but now, P2i alleges for the first time that it could not have possibly discovered this theft until it reviewed Favored's September 2021 financial disclosure, which purportedly "described the activities of Favored Defendants at a level of detail to which P2i was not previously privy or aware" (*see id.* ¶¶ 224, 228). P2i alleges that because Favored disclosed in 2021 that it was working on coatings for displays, it must have stolen trade secrets from a purported P2i "R&D Report" that discussed specific defects in the bonding/lamination of LCD panels during coating. SAC ¶¶ 222-24. Favored attaches to its motion a translated copy of the 2021 financial disclosure to show that the document does not stand for the premise advanced by P2i. Bernstein Decl., Ex. 5 (ECF 71-6, ECF 71-7).[2] The financial disclosure only mentions an LCD panel in a summary of the "Laws, regulations and policies related to the nano-film material manufacturing industry." *See id.*, Ex. 5 at 1-1-157 (ECF 71-6 at 160) (explaining a government-regulatory plan "Focus[ed] on the development of new products used in . . . new flexible/LCD displays."). Elsewhere, the disclosure states more generally that Favored intended to continue developing different coatings for displays. *See id.* at 1-1-179 ("[T]he company also focuses on research and development of DLC films, superhydrophilic films, etc. that can be used in electronic display screens"); 1-1-231, 1-1-366 (noting ongoing/future research and development of new coatings for displays). A generic

---

[2] As noted above, the Court may consider judicially noticeable materials in analyzing a Rule 12(b)(6) motion to dismiss. *See Lee*, 250 F.3d at 688-89. Courts routinely take notice of public regulatory filings and financial reports, though courts may not necessarily accept the truth of their contents. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008). P2i does not oppose or object to the Court's consideration of the documents submitted with Defendants' briefs; rather, it disputes their relevance to the inquiry notice assessment. *See* Opp. at 11-13. The Court accordingly takes judicial notice of the materials and considers them as part of its assessment.

1  disclosure about coating displays does not support an inference that Favored stole secrets
2  regarding specific defects when coating LCD displays.
3        Among the exhibits attached to its motion, Favored additionally proffers several exhibits
4  that demonstrate P2i's actual or inquiry notice of the purported trade secret misappropriation.  *See*
5  Bernstein Decl., Exs. 3, 4, 5 (ECF 71-4, ECF 71-5, ECF 71-6, ECF 71-7).  For example, Favored
6  points to records demonstrating how P2i accused Favored Shenzhen of stealing its intellectual
7  property in 2019.  *See* Bernstein Decl., Ex. 3 ("P2i . . . is launching legal action against a Chinese
8  firm for the theft of its intellectual property. . . .  [P2i] recently discovered that Favored Shenzhen
9  is using nano coating technology and processes similar to P2i's patented technology and processes
10 without its authorisation."); Ex. 4 at 2 (P2i's foreign complaint stating that P2i "tested and
11 analyzed" Favored's products before bringing suit).  Although "Favored Shenzhen" is a separate
12 entity from the Favored Defendants now being sued, it is also the subject of much of P2i's
13 misappropriation claim.  SAC ¶¶ 168-69, 187-88, 194-95.  P2i says little in response to the 2021
14 prospectus and appears to abandon its importance to the discovery issue in the opposition brief.
15 P2i argues in its opposition brief that the materials proffered by Favored are unavailing because its
16 foreign patent enforcement actions against a different Favored entity for "theft of [P2i's]
17 intellectual property" centered specifically on patent infringement and could not have put it on
18 notice that its trade secrets were involved.  Opp. at 11-12.  P2i's claim that it did not discover the
19 purported misappropriation of its trade secrets fails in light of the judicially-noticed materials.
20 The 2021 financial report discloses that Favored was working on coating for displays – this
21 disclosure does not support an inference that Favored relied on P2i's trade secrets to develop such
22 technology.  P2i's contention that it did not learn of the alleged trade secret misappropriation until
23 publication of the 2021 financial disclosure fails as implausible.
24       P2i elsewhere states directly that it "was not aware of this misappropriation in 2019."
25 SAC ¶¶ 225, 229, 236, 240.  This conclusory contention, which the Court need not accept as true,
26 *Iqbal*, 556 U.S. at 678, speaks only to actual notice and does not address inquiry notice.  *See Alta*
27 *Devices, Inc. v. LG Elecs., Inc.*, No. 18-CV-00404, 2019 WL 1924992, at *12 (N.D. Cal. Apr. 30,
28 2019) (evaluating DTSA time-bar using an "inquiry notice" standard, finding breach of a

confidentiality agreement provided inquiry notice of trade secret misappropriation). The Chinese patent P2i sought to enforce against Favored Shenzhen comes from the same family as the '070 Patent asserted here and is directed to specific parameters used in a nano-coating process that overlap with its trade-secret allegations. *Compare* Ex. 1 (citing priority from PCT/GB2005/001017); '070 Patent (same); SAC ¶ 24, *with, e.g.*, SAC ¶¶ 10, 203, 219-21. Thus, if P2i had enough insight into Favored Shenzhen's nano-coating process in 2019 to allege patent infringement, then P2i had inquiry notice to investigate misappropriation of the trade secrets related to Favored's implementation of the nano-coating process as well.

In sum, P2i was at least on inquiry notice of its trade secret misappropriation claim. The judicially noticed materials demonstrate that P2i was on notice of the purported misappropriation more than three years ago, and the SAC only attempts to obfuscate that reality. Therefore, the Court dismisses this cause of action as untimely.

### C. Patent Infringement

P2i brings two causes of action for patent infringement, the first cause of action for infringement of the '087 Patent, and the second cause of action for infringement of the '070 Patent. P2i advances both causes of action against all Defendants. This time around, P2i's theories of patent infringement include (1) direct infringement, (2) induced infringement, (3) willful infringement, and (4) contributory infringement (only against Favored Defendants). Importantly, both motions concede that the only theory of recovery that should remain standing is P2i's claim for direct infringement of the P2i Patents. *See* GN Audio Mtn at 1 (ECF 70 at 8); Favored Mtn. at 2 (ECF 71 at 10). The Court considers in turn whether P2i's theories of induced infringement, contributory infringement, and willful infringement may proceed.

#### 1. Induced Infringement

Establishing induced infringement under Section 271(b) requires a plaintiff to plead "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). The knowledge standard requires proof not only that the accused inducer of infringement had "knowledge of the patent" but also "proof the defendant knew the acts were infringing." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 642 (2015).

11

1    Therefore, a party asserting induced infringement must "prove that: (1) a third party directly

2    infringed the asserted claims of the [relevant] patents; (2) [the defendant] induced those infringing

3    acts; and (3) [the defendant] knew the acts it induced constituted infringement." *Power*

4    *Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016). To

5    satisfy the knowledge requirement, either actual knowledge or willful blindness is required.

6    *Global-Tech*, 563 U.S. at 768.

7          For the '087 patent, P2i alleges only that GN Audio induces infringement by "selling the

8    GN Audio Products with instructions." SAC ¶¶ 247-49; *id.* ¶ 156 ("providing instructions,

9    support, and other such resources that facilitate the purchase and/or use of the GN Audio

10   Products"). P2i alleges also that GN does so by "(1) providing instructions or information to

11   explain how to use the GN Audio Products in an infringing manner (including, for example, at

12   trade shows, via promotional videos, etc.); and (2) touting these infringing uses of the GN Audio

13   Products in GN Audio's advertisements and/or other public content." SAC ¶ 248. For the '070

14   patent (Count 2), P2i alleges that Favored sold its nano-coating machines to GN Audio and that

15   Favored provided training, materials, instructions, and support related to the operation of nano-

16   coating machines that infringe the '070 Patent. SAC ¶ 103.

17         P2i's allegations of "instructions or information," without more detail about those

18   instructions or information or "infringing uses," fall flat as far too imprecise. *See, e.g.*,

19   *Hypermedia Navigation LLC v. Google LLC*, No. 18- cv-6137-HSG, 2019 WL 1455336, at *23

20   (N.D. Cal. Apr. 2, 2019) (dismissing induced-infringement allegations based on non-specific

21   references to "support and guides" "without ever saying what those materials contain" and fails to

22   "detail how an end user would infringe . . . by following instructions" (citing *CAP Co. v. McAfee,*

23   *Inc.*, No. 14-cv-5068, 2015 WL 3945875, at *5 (N.D. Cal. June 26, 2015)). Courts in this district

24   draw a distinction between allegations that cite instructions generically, as P2i does here, and

25   allegations that identify the specific instructions that induce infringement. *See Hypermedia*

26   *Navigation*, 2019 WL 1455336, at *2 ("[W]here a plaintiff merely 'makes passing references to

27   user manuals guides, and support articles, without ever saying what those materials contain,' that

28   'is wholly inadequate for an inference of specific intent,'" quoting *CAP Co.*, 2015 WL 3945875, at

\*5). P2i has nothing but guesses about any "training" or similar activities, much less theories of how it specifically encouraged infringement.

Further, Defendants argue that P2i did not plausibly plead pre-suit knowledge of the patents or infringement, even in the form of a pre-suit notice letter, which is standard practice in this District. *Splunk Inc. v. Cribl, Inc.*, No. C 22-07611, 2023 WL 2562875, at \*3 (N.D. Cal. Mar. 17, 2023) (citing *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 643 (N.D. Cal. 2022)). P2i counters that it sent a pre-suit letter, but it admits that it sent the letter to GN Hearing, not to GN Audio. SAC ¶ 154. Those are distinct entities, as even P2i's complaint acknowledges. *Id.* ¶¶ 11, 130. P2i pleads no facts making plausible the inferences necessary to disregard the corporate form and impute notice from a parent to a subsidiary. *See, e.g.*, *In re Mortg. Fund'08 LLC*, 527 B.R. 351, 364 (N.D. Cal. 2015) (rejecting, at motion-to-dismiss stage, plausibility of imputing knowledge between parent and subsidiary); *AGIS Software Development LLC v. Google LLC*, No. 22-cv-04826, 2023 WL 8351545, at \*16 (N.D. Cal. Oct. 10, 2023) ("[A] plaintiff seeking to impute a parent corporation's knowledge of a patent to a subsidiary must provide more than general allegations regarding ownership interests." (marks and citation omitted)). GN Audio presses further to argue that the letter itself was ineffective to provide pre-suit notice – it names no accused product and no accused method. Bernstein Decl. Ex. 1 (ECF 70-2). The letter does not mention GN Audio at all or the '087 patent at all. *Id.* It does not analyze the patents or apply them to any product or method. *Id.* It demands that GN Hearing "cease all infringing activity immediately," *id.* (bold omitted), but does not say what that infringing activity is. *Id.* Rather, it simply demands that GN Hearing discontinue any relationship whatsoever with a Favored entity. *Id.* at 2. The letter is insufficient to establish pre-suit knowledge, and the claim accordingly cannot stand against GN Audio.

P2i alleges that the Favored Defendants knew of P2i's patents because one of the Favored entities petitioned sought inter partes review of two of P2i's patents. SAC ¶¶ 127-29. However, inter partes review is not enough because mere participation in such a process does not plausibly establish knowledge – pleading knowledge of the patents alone is not enough to plead the "specific intent to encourage, recommend, or promote infringement" necessary to establish

13

1    inducement. *See Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021).

2    Moreover, the inter partes review proceedings did not involve the '087 Patent, and they were filed

3    in 2019 and 2020, before the '087 Patent existed. SAC ¶ 25.

4          In sum, P2i's claims for induced infringement fall short of meaningfully alleging

5    inducement because they're based on mere allegations of "instructions or information" without

6    more detail. Additionally, they fall short of alleging pre-suit knowledge of the sort that is

7    necessary to state a claim. P2i thus fails to allege induced patent infringement, and the Court must

8    grant the motion to dismiss the claims to the extent they are based on this theory.

### 2.     Contributory Infringement

10         P2i only advances contributory infringement against the Favored Defendants. "To state a

11   claim for contributory infringement, the patent owner must properly allege: '1) that there is direct

12   infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has

13   no substantial noninfringing uses, and 4) that the component is a material part of the invention.'"

14   *People.ai, Inc. v. SetSail Techs., Inc.*, No. C 20-09148 WHA, 2021 WL 2333880, at *6 (N.D. Cal.

15   June 8, 2021) (quoting *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)).

16         P2i argues that Favored contributes to its customers' direct infringement of the '087 Patent

17   "by offering to sell, selling, and/or importing . . . a component of the Accused Products, or a

18   material or apparatus for use in practicing a process." SAC ¶ 254. However, P2i never actually

19   identifies the accused "component." Its allegations are threadbare, listing only the elements of the

20   cause of action. *Id.* Nowhere does P2i allege (1) what the "components" in question are, (2) how

21   they are a "material part of the invention," (3) how they are "especially made or . . . adapted" for

22   use in infringement, or (4) how Favored knew they were especially made or adapted to infringe.

23   *See* 35 U.S.C. § 271(c). This is insufficient.

24         Regarding the other patent at issue, P2i argues that the Favored Defendants "have been and

25   are continuing to contributorily infringe the '070 [method] patent by selling or offering to sell

26   nano-coating machines . . . to GN Audio." SAC ¶¶ 273-76; *see also id.* ¶¶ 97-101 (contributory

27   infringement of the '070 method patent). P2i bases its claim on sales of Favored's machines (SAC

28   ¶¶ 97-101, 273-76), but P2i does not identify any facts suggesting a sale occurred in the United

States, as is required by Section 271(c). *Ricoh Co. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008) ("[t]he language of [35 U.S.C. § 271(c)] incorporates the core notion that one who sells a component especially designed for use in a patented invention may be liable as a contributory infringer, provided that the component is not a staple article of commerce suitable for substantial noninfringing use."). Further, P2i acts as if its patent covers every use of a nanocoating machine, though the '070 patent is much narrower. *See, e.g.*, '070 Patent, claim 1 (covering, among other things, specific parameters for nanocoating). P2i is required to allege facts that show Favored's machines (1) are a "material or apparatus for use in practicing" the claimed method, (2) are "especially made or . . . adapted" for that purpose, and (3) are not "suitable for substantial noninfringing use" – and that (4) Favored knew the machines are especially made or adapted for infringement. 35 U.S.C. § 271(c). P2i does not allege facts in connection with those four elements. Indeed, nothing in P2i's pleadings suggests that Favored's machines can only be used in accordance with the specific parameters of the '070 Patent's claims, and for this reason as well, P2i's claim is deficient. *See* SAC ¶¶ 97-101, 273-76; *see also Cyph, Inc. v. Zoom Video Commc'ns, Inc.*, 642 F. Supp. 3d 1034, 1046-47 (N.D. Cal. 2022) (granting dismissal because the pleading lacked any factual allegations "as to whether the accused products are capable of substantial non-infringing uses or not"). To the contrary, the '070 Patent claims suggest that the coating machines have a range of settings and modifications, and P2i fails to establish that Favored's machines are not suitable for a "substantial non infringing use." 35 U.S.C. § 271(c). Therefore, P2i again fails to establish contributory infringement.

### 3.  Willful Infringement

P2i alleges that Defendants' infringement of its patents is willful and therefore warrants enhanced damages under Title 35 U.S.C. § 284. Section 284 of the Patent Act directs courts to award a prevailing claimant "damages adequate to compensate for the infringement" and "may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. Indeed, "willfulness is relevant [only] to damages calculations." *Google LLC v. Princeps Interface Techs. LLC*, No. 19-cv-06566-EMC, 2020 WL 1478352, at *2 (N.D. Cal. Mar. 26, 2020). The Supreme Court explained that "courts should generally only award enhanced damages . . . in 'egregious

15

cases typified by willful misconduct.'" *Id.* (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 106 (2016)). Such damages "are not to be meted out in a typical infringement case, but are instead designed as a punitive or vindictive sanction for egregious infringement behavior" that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or – indeed – characteristic of a pirate." *Halo*, 579 U.S. at 103-04 (internal quotations mark omitted). "Since *Halo*, courts in the [Northern District of California] have required willful infringement claims to show both knowledge of the . . . [p]atents and egregious conduct in order to survive a motion to dismiss." *Google*, 2020 WL 1478352, at *2 (internal quotation omitted); *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-CV-00072, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017) (Freeman, J.) (finding "conclusory allegations of knowledge and infringement . . . is not enough to plausibly allege egregiousness") (cleaned up). Moreover, most courts in this district reject that a complaint alone renders accused infringement willful without other pre-suit indicia. *See, e.g.*, *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-00072, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017) (dismissing for failure to plausibly plead pre-suit knowledge); *Dali Wireless*, 2022 WL 1426951, at *3-4.

Here, there are no pre-suit indicia of knowledge that would support a claim of willful infringement. As discussed above, P2i fails to plead both knowledge of the patents and knowledge of infringement of its two patents. Both "knowledge of the patent and knowledge of infringement must be pled with plausibility." *Dali Wireless*, 638 F. Supp. 3d at 1095 (citation omitted). P2i's failure to meet the knowledge pleading standard for induced infringement therefore renders its willful infringement allegations deficient too. *Splunk*, 662 F. Supp. 3d at 1036-40 (dismissing both willfulness and inducement claims for inadequate pleading of knowledge). P2i pleads only a boilerplate allegation that infringement was "willful" and does not include even a conclusory allegation of egregiousness. *See* SAC ¶¶ 279-80, 340. These allegations are insufficient to warrant P2i's willfulness claims to proceed.

**D.   Leave to Amend**

Pursuant to Federal Rule of Civil Procedure 15(a), a court should grant leave to amend a complaint "when justice so requires," because "the purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d

16

1122, 1127 (9th Cir.2000) (en banc). The Court may deny leave to amend, however, for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Court previously granted P2i the opportunity to amend its complaint (ECF 56), but the amendments largely failed to remedy the defects. Additionally, P2i may not proceed with its trade secret misappropriation claim because it is time-barred. The Court finds further amendment would prove futile. Therefore, the Court declines to permit P2i to amend further.

### E. Defendants' Requests for Attorney's Fees

Under the local rules, "[c]ounsel for the respective parties must meet and confer for the purpose of resolving all disputed issues relating to attorneys fees before making a motion for award of attorney's fees." Civ. L.R. 54-5(a). Then, the party filing the motion must submit a declaration that contains a "statement that counsel have met and conferred for the purpose of attempting to resolve any disputes with respect to the motion or a statement that no conference was held, with certification that the applying attorney made a good faith effort to arrange such a conference, setting forth the reason the conference was not held." Civ. L.R. 54-5(b)(1).

Here, Defendants include a request for attorney's fees in their motion and reply papers. The declarations of counsel submitted in support of the briefs do not certify compliance with the meet-and-confer requirements of Local Rule 54-5. *See* Bernstein Decl. in support of GN Audio Mtn. (ECF 70-1); Bernstein Decl. in support of Favored Mtn. (ECF 71-1); Bernstein Decl. in support of Favored Reply (ECF 79-1). Therefore, the Court denies this request without prejudice for the failure to meet and confer in accordance with the Local Rules.

//
//
//
//

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss. Defendants shall file an answer to the SAC focused on the direct patent infringement allegations within 28 days from the date of this order.

**IT IS SO ORDERED.**

Dated: September 24, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**