Matthew C. Bernstein, Bar No. 199240
MBernstein@perkinscoie.com
Patrick J. McKeever, Bar No. 268763
PMcKeever@perkinscoie.com
**PERKINS COIE LLP**
11452 El Camino Real, Ste 300
San Diego, California 92130-2080
Telephone: +1.858.720.5700
Facsimile:  +1.858.720.5799

*Additional Counsel listed on signature page*

Attorneys for Defendants
Favored Tech USA Corporation,
Jiangsu Favored Nanotechnology Co., Ltd. and GN Audio USA Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| P2I LTD.,<br><br>         Plaintiff,<br><br>      v.<br><br>FAVORED TECH USA CORPORATION; JIANGSU FAVORED NANOTECHNOLOGY CO., LTD.; GN AUDIO USA INC.; and DOES 1-10, inclusive,<br><br>         Defendants. | Case No. 3:23-cv-01690-AMO<br><br>**DEFENDANTS FAVORED TECH USA CORPORATION, JIANGSU FAVORED NANOTECHNOLOGY CO., LTD. AND GN AUDIO USA INC.'S NOTICE OF MOTION AND MOTION FOR ATTORNEY FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     March 6, 2025<br>Time:    2:00 p.m.<br>Place:   Courtroom 10<br>Honorable Araceli Martínez-Olguín<br><br>**DEMAND FOR JURY TRIAL** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 6, 2025, at 2:00 p.m., or as soon as the matter may be heard in Courtroom 10 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Favored Tech USA Corporation ("FTC"), Jiangsu Favored Nanotechnology Co., Ltd. ("JFN") and GN Audio USA Inc. ("GNA") (collectively, the "Defendants") will and hereby move the Court for attorney's fees and translation costs.

This motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the pleadings filed in this action; and such other arguments and matters as may be offered at the time of the hearing on this motion.

Dated:  November 4, 2024

**PERKINS COIE LLP**

By:/s/ Patrick J. McKeever
    Matthew C. Bernstein, Bar No. 199240
    MBernstein@perkinscoie.com
    Patrick J. McKeever, Bar No. 268763
    PMcKeever@perkinscoie.com
    PERKINS COIE LLP
    11452 El Camino Real, Suite 300
    San Diego, California 92130-2080
    Telephone:   858.720.5721
    Facsimile:   858.720.5799

    Andrew T. Dufresne (*pro hac vice*)
    ADufresne@perkinscoie.com
    PERKINS COIE LLP
    33 E. Main Street, Suite 201
    Madison, WI 53703-3095
    Telephone:   608.663.7492
    Facsimile:   608.283.4492

    Matthew A. Lembo (*pro hac vice*)
    MLembo@perkinscoie.com
    PERKINS COIE LLP
    1155 Avenue of the Americas, 22nd Floor
    New York, NY 10036-2711
    Telephone:   212.262.6900
    Facsimile:   212.977.1649

    Jonathan I. Tietz (*pro hac vice*)
    JTietz@perkinscoie.com
    PERKINS COIE LLP
    700 13th Street, NW, Suite 800
    Washington, D.C. 20005-3960
    Telephone:   202.654.6200
    Facsimile:   202.654.6211

    *Attorneys for Defendants Favored Tech USA Corporation,*
    *Jiangsu Favored Nanotechnology Co., Ltd. and GN Audio USA Inc.*

# TABLE OF CONTENTS

Page

I.   INTRODUCTION AND STATEMENT OF ISSUES ................................................... 1

II.  FACTUAL BACKGROUND ................................................................................... 2

     A.   P2i wielded under-researched legal theories, scattergun pleadings, and a
          long, untranslated document ..................................................................... 2

     B.   Favored and GN Audio were forced to incur substantial expenses ....................... 5

     C.   After this Court dismissed much of P2i's case with prejudice, Favored and
          GN Audio sought reimbursement of its fees from P2i, but P2i refused ............... 5

III. LEGAL STANDARDS ......................................................................................... 6

     A.   Section 1927 ......................................................................................... 6

     B.   Inherent powers ..................................................................................... 7

IV.  ARGUMENT ...................................................................................................... 7

     A.   Fees and expenses are warranted under 28 U.S.C. § 1927 or the Court's
          inherent powers in connection with P2i's trade-secret allegations ....................... 7

          1.   P2i and its counsel unreasonably drove up costs ....................................... 8

          2.   P2i and its counsel acted in bad faith ................................................. 11

     B.   Fees are warranted under 28 U.S.C. § 1927 or this Court's inherent powers
          in connection with P2i's indirect and willful infringement allegations ............... 13

          1.   P2i and its counsel persisted with a pattern of frivolous, or at
               minimum nonmeritorious, indirect and willful infringement
               allegations ...................................................................................... 13

          2.   P2i and its counsel acted in bad faith ................................................. 19

     C.   Fees are warranted in connection with filing this fee motion ........................... 19

     D.   The fees Favored and GN request are reasonable ...................................... 19

V.   CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*B.K.B. v. Maui Police Dep't,*
  276 F.3d 1091 (9th Cir. 2002)...................................................................................11

*Blixseth v. Yellowstone Mountain Club, LLC,*
  796 F.3d 1004 (9th Cir. 2015).....................................................................................6

*Blixseth v. Yellowstone Mountain Club, LLC,*
  854 F.3d 626 (9th Cir. 2017)......................................................................................19

*EscapeX IP LLC v. Google LLC,*
  No. 22-cv-8711-VC, 2024 WL 557729 (N.D. Cal. Feb. 12, 2024) ..............................18, 19, 20

*Favored Tech Corp. v. P2i Ltd.,*
  No. 22-1409 (Fed. Cir. Mar. 17, 2022), ECF 14.........................................................2

*Fink v. Gomez,*
  239 F.3d 989 (9th Cir. 2001)............................................................................7, 11, 18

*Gust, Inc. v. Alphacap Ventures, LLC,*
  905 F.3d 1321 (Fed. Cir. 2018).....................................................................................6

*H.P.D. Consolidation, Inc. v. Pina,*
  No. 15-CV-05309-EMC, 2017 WL 1046960 (N.D. Cal. Mar. 20, 2017)...................................6

*In re Facebook, Inc. Consumer Priv. User Profile Litig.,*
  No. 18-md-2843-VC, 2023 WL 1871107 (N.D. Cal. Feb. 9, 2023)..........................................7

*In re Girardi,*
  611 F.3d 1027 (9th Cir. 2010).......................................................................................6

*VDPP, LLC v. Volkswagen Group of America, Inc.,*
  No. 23-cv-2961-LHR (S.D. Tex. July 11, 2024) ......................................................20

*Viavi Sols. Inc. v. Platinum Optics Tech. Inc.,*
  No. 20-cv-5501-EJD, 2024 WL 1199022 (N.D. Cal Mar. 19, 2024) ........................................6

STATUTES

28 U.S.C. § 1927 ..........................................................................................6, 7, 11, 12, 18

35 U.S.C. § 285 ................................................................................................................2

RULES

Civil Local Rule 54-5.......................................................................................................6

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

OTHER AUTHORITIES

4 McCarthy on Trademarks and Unfair Competition § 27:7 (5th ed.)..............................................2

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION AND STATEMENT OF ISSUES

Intellectual property laws are meant to promote marketplace competition between innovators who vie to offer newer and better things. When disputes arise about that intellectual property, they should be tried thoughtfully because needless litigation saps resources from innovators, consumers, and the justice system. If a party has a specific dispute, it should define that dispute. Efficient litigation and fair settlement prospects demand nothing less.

Intellectual property is not meant to be litigated by lobbing a disorganized, underdeveloped complaint like a grenade, hoping that the mess will gin up PR, worry customers, and drain resources. Regrettably, Plaintiff P2i and its counsel took that tack. As defendants Favored and GN Audio have been forced to painstakingly explain in three successive motions to dismiss, P2i started this case without having a clear idea what its beef with Favored really was. Its first complaint failed to identify any accused product, failed to plead necessary elements, alluded to trade secrets it could not define, and concocted a cause of action that does not exist. P2i's second complaint compounded the problem. All it did was make things messier. P2i added paragraphs to give the illusion of thoroughness, and to burden Favored and GN Audio with more work. But that second complaint *still* failed to identify an accused product and *still* failed to identify trade secrets or misappropriation.

After this Court gave P2i another chance to amend and even to define its trade secrets under seal, P2i refused. Instead, it crammed more stuffing into its complaint and multiplied the categories of supposed trade secrets. P2i also went with a smokescreen. It cited a lengthy non-English document and insisted it supported its allegations. P2i's counsel either did not read that document itself or did not think anyone else would bother. When Favored spent over $40,000 translating it, it was clear that P2i had not been forthright. In short, P2i and its counsel have engaged in bad-faith vexatious litigation conduct, and at every turn has wielded this shifting litigation for customer pressure and PR. After three rounds of motions practice, enough is enough. Favored and GN Audio should not have had been forced to wade through P2i's second amended complaint—where P2i did not bother to fix the clear problems that had been set out, did not heed the Court's guidance as to how it might resolve those problems, and instead resorted to obfuscation tactics to make its complaint

1    expensive to address.

2    Attorneys' fees and translation expenses are warranted to compensate Favored and GN Au-

3    dio for the unnecessary expenses they incurred from P2i's bad-faith claims advanced in its second

4    amended complaint.[1]

5    **II.    FACTUAL BACKGROUND**

6    **A.    P2i wielded under-researched legal theories, scattergun pleadings, and a long, untranslated document**

7

8    In April 2023, P2i sued its competitor Favored and its former customer GN Audio in this

9    Court. ECF 1. Intellectual property disputes almost always have a particular focus, such as a spe-

10   cific new product. This one did not. Indeed, just a year before the lawsuit, P2i had told the Federal

11   Circuit that it was "not aware" of any domestic infringement by Favored of the '070 Patent whose

12   validity it was defending in that appeal and that it asserts now. *See* Response to Motion to Substitute

13   Party, *Favored Tech Corp. v. P2i Ltd.*, No. 22-1409 (Fed. Cir. Mar. 17, 2022), ECF 14 at 8. P2i

14   was apparently *still* not aware of any infringement when it finally sued the next year, because its

15   first and second attempts at complaints did not identify any. *See, e.g.*, ECF 25 at 6–7; ECF 40 at 7–

16   9; ECF 60 at 23:9–13 ("[THE COURT:] I think the first amended complaint fails to provide sufficient

17   factual content to identify the accused products or product components…."). Even on its third at-

18   tempt to state its claim, the best it could muster was identifying a handful of products demonstrated

19   at a trade show. *See, e.g.*, ECF 65 ("SAC") ¶¶ 43–44, 107–13. And yet, P2i's complaint included

20   an array of theories (direct patent infringement, induced patent infringement, contributory patent

21   infringement, willful patent infringement, trade secret misappropriation, tortious interference, and

22   unfair competition) without specific supportive facts.

23   Throughout its pleadings, P2i's approach has been characterized by obtuseness, obfusca-

24   tion, and obstinance:

25   • ***The Imaginary Cause of Action.*** P2i's first complaint asked for relief under a "federal

26

27   ───────────────
     [1] Favored and GN Audio are both undisputedly a "prevailing party" on P2i's trade-secret,
28   indirect-infringement, and willful-infringement claims within the meaning of 35 U.S.C. § 285. And
     for all the same reasons set forth herein, this case is also "exceptional" warranting the award of
     fees. Section 285 thus provides another basis for the Court to award fees should it choose to enter
     partial judgment on the trade secret, indirect infringement, and willful infringement claims.

common law unfair competition" cause of action. Compl. ¶¶ 161–70. The trouble for P2i was that *no such thing exists*. It would have known that if it had looked at basic hornbook law. *See* Favored's Mot. to Dismiss (ECF 25) at 14–15 (collecting authorities); McCarthy on Trademarks and Unfair Competition § 27:7 (5th ed.) ("[T]here is no federal … common law of general unfair competition."). Favored and GN Audio explained as much in their first motion to dismiss. ECF 25 at 14–15. Tacitly conceding the point, P2i abandoned that non-theory in its first amended complaint. But by failing to research from the beginning whether that cause of action even existed, P2i nonetheless forced on Favored the cost of doing P2i's homework for it.

- **The Missing Elements.** P2i's first and second complaints asserted state-law tortious interference but did not plead an independently wrongful act at all—not even in a conclusory sense. ECF 60 at 24:14–21. Its first, second, and third complaints asserted willful infringement, but did not plead egregious conduct—again, not even in a conclusory sense. Defendants pointed this out repeatedly. *See, e.g.*, ECF 25 at 11 (regarding original complaint); ECF 40 at 14 (regarding first amended complaint); ECF 71 at 24–25 (regarding second amended complaint).

- **The Unimproved Amendments.** P2i's first complaint had serious problems with its allegations of induced and contributory infringement. ECF 25 at 7–10. For instance, it did not allege that Defendants supplied components that were a material part of the invention and were not suitable for substantial noninfringing uses. *Id.* at 9–10. Nor did it allege inducing acts or knowledge of infringement. *Id.* at 7–8. The successive complaints did not fix those problems—and did not even make a substantive attempt to do so. *See, e.g.*, ECF 71 at 16 (mapping failure to improve flaws across the pleadings for induced infringement); *id.* at 20 (same, for contributory infringement).

- **The Unidentified Trade Secrets.** P2i's first two complaints failed to identify any trade secrets. ECF 25 at 11–13 (regarding original complaint); ECF 40 at 14–21 (regarding first amended complaint). Instead, P2i wove a conspiracy-theory web and suggested many different broad categories of information that it suggested could have trade secrets within them. ECF 40 at 15 (cataloguing P2i's "sparse and disjointed" story). That gave Favored no idea *what* it had supposedly misappropriated, much less how. At the hearing on the motion to dismiss, the Court explained that P2i's trade-secret allegations were "much too high level to provide effective notice of the alleged

trade secrets boundaries," and urged P2i to "be more specific in any amendment." ECF 60 (Tr. 24:2–7). The Court granted P2i the opportunity to amend its complaint, ECF 56, specifically inviting P2i to submit any necessary sensitive material "under seal … for counsel's eyes only" to identify the trade secrets while still protecting against disclosure to the public or a competitor. ECF 60 (Tr. 27:2–19).

P2i did not do that. It maintained its sweeping categories and took them further, adding handfuls of generic categorical examples. *See* ECF 71 at 5–7 (cataloguing examples).

- **The Time-Barred Allegations.** In alleging trade-secret misappropriation, P2i reached back far past the three-year statute of limitations. Favored's second motion to dismiss explained that P2i's trade-secret claim was time-barred because it was based on acts that P2i pleaded were a decade old, which should have put P2i on notice of its claim. ECF 40 at 17. And well before P2i sued Favored in this Court, it had also sued in China, broadly alleging intellectual property theft. ECF 40 at 18. The Court pointed that out at oral argument on Favored's second motion to dismiss, explaining that the Court would "need more detail regarding the discovery of the trade secret misappropriation if you want that claim to move forward." ECF 60 at 24:8–13.

P2i did *not* provide more detail. Instead, it tried to scrub its complaint of the facts it previously pleaded that showed that it was on notice. ECF 71 at 10. In their place, it alleged that it could not have uncovered any misappropriation until Favored published a financial disclosure in September 2021. ECF 71 at 9. That allegation was conclusory. It did not identify any particular content in that disclosure and did not attach it to the complaint. *Id.* at 10–13. But it also ignored its own prior public accusations of intellectual property theft before the statute of limitations. *Id.* at 11.

- **The Untranslated Document.** Finally, P2i tried to snooker the Court and inflict expense on Favored by referring to a nearly 700-page Chinese-language document for which it provided no translation. *E.g.*, ECF 71 at 25. P2i indeed did not even bother to pincite that document for the Court. ECF 71 at 25. The reason became clear after Favored was forced to spend more than $40,000 translating the document itself and providing a copy to the Court, *see* ECF 71 at 12: the document did not even come close to saying what P2i said it did. ECF 79 at 15. In all, in addition to the cost of briefing, P2i inflicted more than $40,000 on Favored in translation costs alone. *See* ECF 79-1

(Decl.) ¶ 3; ECF 79-3 (invoice). And when Favored called P2i's bluff, P2i sheepishly "abandoned" its reliance on the document. ECF 85 at 10.

### B.    Favored and GN Audio were forced to incur substantial expenses

P2i's conduct has inflicted unnecessary burdens on Favored and GN Audio—and this Court. Because P2i did not define any dispute with particularity at the outset, failed to research the basic law, repeatedly failed to cure defects, and tried to hide behind a lengthy, untranslated document, Favored and GN Audio incurred substantial expenses:

- Favored and GN Audio had to pore over three complaints that were superficially lengthy but that, despite the length, failed to put Defendants on notice of what P2i's dispute was.

- Favored and GN Audio had to engage in three rounds of dispositive motion briefing, including an oral argument.

- Favored and GN Audio had to perform the fundamental legal research that P2i failed to do that showed why P2i's non-patent claims were frivolous.

- Favored and GN Audio had to translate a 700-page document (because P2i did not translate it) and review it in depth (because P2i did not pincite it to support its allegations).

That all added up—not only to a financial burden but to a practical one. Because of P2i's hide-the-ball tactics, Favored and GN Audio were sued on April 7, 2023, but the scope of the dispute was not even close to clear until September 24, 2024, when the third motion was resolved. That is close to one-and-a-half years.

### C.    After this Court dismissed much of P2i's case with prejudice, Favored and GN Audio sought reimbursement of its fees from P2i, but P2i refused

The Court granted the most recent motion to dismiss with prejudice. ECF 85 at 17. The Court's opinion observed that P2i had not remedied the problems with its complaint despite having the opportunity to amend. *Id.* at 17. As to trade-secret misappropriation, the opinion concluded that, like in the first amended complaint, *id.* at 6, P2i insufficiently described its purported trade secrets, *id.* at 5–8. "Even the most specific allegations" provided "too general an overview" to plead trade secrets. *Id.* at 7. Moreover, "many of its purported secrets [were] publicly known." *Id.* at 8. The Court also observed that P2i's claim was time-barred anyway because "P2i was on notice of the

1    purported misappropriation more than three years ago," and "the [second amended complaint] only

2    attempt[ed] to obfuscate that reality." *Id.* at 11. As to induced infringement, the opinion observed

3    that P2i had not pleaded inducing acts or pre-suit knowledge of the patents and infringement. *Id.* at

4    12–13. As to contributory infringement, the opinion observed that P2i had not pleaded necessary

5    elements of that theory. *Id.* at 14–15. And as to willfulness, the opinion observed that P2i had "not

6    include[d] even a conclusory allegation of egregiousness." *Id.* at 16. Those were all problems that

7    Favored and GN Audio had identified to P2i repeatedly.

8        In their respective motions to dismiss P2i's Second Amended Complaint, Favored and GN

9    Audio both explained that P2i's litigation conduct had been troubling enough to warrant attorneys'

10   fees. ECF 71 at 25 (Favored's motion); ECF 79 at 15 (Favored's reply); ECF 70 at 14–15 (GN

11   Audio's motion); ECF 78 at 7–8 (GN Audio's reply). This Court denied that fee request "without

12   prejudice for the failure to meet and confer" under Local Rule 54-5. ECF 85 at 17. The parties have

13   since met and conferred, but P2i would not agree to reimburse anything. *See* McKeever Decl. ¶ 2.[2]

14   Now at an impasse with P2i, Favored and GN Audio move the Court for fees and translation costs.

15   **III.    LEGAL STANDARDS**

16       **A.    Section 1927**

17       Fees are warranted when an attorney "multiplies the proceedings in any case unreasonably

18   and vexatiously." 28 U.S.C. § 1927. *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004,

19   1007 (9th Cir. 2015) (noting fees requirements); *H.P.D. Consolidation, Inc. v. Pina*, No. 15-CV-

20   05309-EMC, 2017 WL 1046960, at *3–4 (N.D. Cal. Mar. 20, 2017) (awarding fees for filing com-

21   plaints that failed to address clear deficiencies identified by the parties and court). A court may

22   require the attorney to personally satisfy "the excess costs, expenses, and attorneys' fees reasonably

23   incurred because of such conduct." 28. U.S.C. § 1927. Regional circuit law controls § 1927 motions

24   in patent cases. *Gust, Inc. v. Alphacap Ventures, LLC*, 905 F.3d 1321, 1327 (Fed. Cir. 2018).

25       Sanctions under § 1927 are appropriate upon a finding that an "attorney recklessly or inten-

26   tionally misled the court." *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010).

27

28

---

[2] "McKeever Decl." refers to the Declaration of Patrick J. McKeever filed herewith.

Bad faith is present either "when an attorney knowingly or recklessly raises a frivolous argument" or when an attorney "argues a meritorious claim for the purpose of harassing an opponent." *Viavi Sols. Inc. v. Platinum Optics Tech. Inc.*, No. 20-cv-05501-EJD, 2024 WL 1199022, at *4 (N.D. Cal Mar. 19, 2024) (citation omitted).

### B.    Inherent powers

"[T]he the district court has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). Sanctions are available under a court's inherent powers "for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* at 994. For instance, "a court may levy fee-based sanctions when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in the litigation for an improper purpose." *Id.* at 992. For purposes of sanctions under a court's inherent powers, "a finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees." *Id.*; *see also In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 18-md-2843-VC, 2023 WL 1871107, at *20 (N.D. Cal. Feb. 9, 2023) ("A court may impose sanctions under its inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." (citations omitted)).

## IV.    ARGUMENT

### A.    Fees and expenses are warranted under 28 U.S.C. § 1927 or the Court's inherent powers in connection with P2i's trade-secret allegations

P2i's bad-faith conduct surrounding its trade-secret allegations multiplied the proceedings and inflicted a needless burden on Favored. P2i's trade-secret misappropriation claim was doomed from the start. Yet rather than concede that fact, P2i not only tried to defend the propriety of its claim repeatedly with unsupported and conclusory allegations but also forced Favored to translate a long, complicated document that P2i evidently knew did not support its case. Accordingly, the

Court should order P2i and its counsel to compensate Favored for (1) reasonable attorneys' fees in responding to the trade-secret claims in its second amended complaint and (2) translation expenses.

### 1. P2i and its counsel unreasonably drove up costs

#### a. P2i failed to fix the problems with its pleadings, simply making them more complicated and costly to deal with instead

Despite publicly proclaiming that Favored stole its intellectual property back in 2019, P2i nonetheless asserted a trade-secret misappropriation claim years later—well past the three-year statutory window—as part of a pressure campaign to deter Favored and its customers from using coating services other than P2i's. Throughout hundreds of paragraphs across its three complaints, P2i presented a claim that shifted at every turn: what started as a claim for misappropriating a few strategic pricing and customer documents in the original complaint transformed into a vast conspiracy in which Favored stole nearly everything P2i purportedly holds confidential without ever raising suspicion, supported by a smattering of contradictory allegations that ignored timelines, conflated different corporate entities, and drew threadbare ties between P2i's supposed secrets and Favored's use of them. In doing so, P2i forced Favored to repeatedly defend against its scattershot pleading, multiplying the proceedings and imposing undue costs on Favored.

Despite having three bites at the apple, P2i never identified a trade secret that was supposedly misappropriated, its theory of the misappropriation shifted, and P2i drove itself out of the statutory window as it grasped to resuscitate its claim. P2i's first complaint alleged that a few *categories* of purported secrets were stolen related to its strategic partnerships—such as customer lists, business strategy plans, and/or price information—but never *identified* any trade secret. ECF 1 ¶¶ 42–43, 143. After Favored sought dismissal, ECF 25, P2i did not oppose, and instead filed a First Amended Complaint, ECF 38. But the First Amended Complaint fared no better. P2i added paragraphs to its complaint, in which it laid out for the first time a grand conspiracy involving three former P2i employees who purportedly stole *everything*—including "know-how, negative know-how…, ideas, processes, improvements, discoveries, developments, designs and techniques," and more. ECF 38 ¶ 325; *see also id.* ¶¶ 112–73, 325–74. Worse still, P2i alleged this theft based on an investigation it apparently conducted nearly a decade earlier, *see id.* ¶ 44 (relying on images from

P2i's investigation around 2014), and the misappropriation was evidenced by Favored developing its coating system too fast, which would have been evident *in 2016*, *id.* ¶ 137. Nor did P2i ever tie any alleged misappropriation to the Favored Defendants it chose to sue, but to a separate corporate entity based only on the fact that its former employees had invested in that entity, and that one former employee and Jiangsu Favored's chairman and CEO went to school together years earlier. *Id.* ¶¶ 122–52.

After Favored again sought dismissal, the Court finally provided P2i an ultimatum: explain why P2i just learned of the misappropriation within the three-year statutory window and identify the allegedly misappropriated secrets, or the claim will be dismissed once and for all. ECF 60 (Tr. 24:2–7, 27:2–19). Rather than fold, however, P2i came back a third time, striking all factual allegations that insinuated it learned of any supposed theft years earlier and falsely proclaiming P2i had only learned of the misappropriation after Favored made a public financial disclosure in 2021—a smoking-gun document. *See, e.g.*, ECF 65 ¶¶ 224–25, 228–29, 232–40. And rather than identify its secrets, it simply added a few examples of things it considered secrets without identifying how Favored misappropriated them at all. *See, e.g.*, *id.* ¶¶ 219–40.

When Favored pushed back that P2i still failed to identify a trade secret, and Favored's 2021 financial disclosure was no smoking gun, in a *third* motion to dismiss, P2i tried to defend its still-too-broad categories as a matter of law despite this Court already rejecting that rationale, ECF 76 at 2–10, and abandoned all reliance on Favored's 2021 financial disclosures to demonstrate its claim was timely, *id.* at 11–13. P2i therefore did *nothing* to address either of the points raised by the Court, yet Favored was forced to incur substantial cost to simply point that out.

P2i's presentation of its trade-secret allegations in its original and first amended complaint was bad enough. But the second amended complaint was even more egregious. Favored should not have been subjected to that expense in responding to the second amended complaint in particular *because the Court had already put P2i on clear notice* of the problems with its claims.

At each turn, P2i has sought to prolong the proceedings through lengthy, difficult-to-parse, and contradictory pleadings without doing what was needed to state a claim for trade-secret misap-propriation. To defend against P2i's tactics in its second amended complaint, Favored incurred

*substantial* costs preparing a motion to dismiss P2i's second amended complaint on the topic for a claim that any reasonable investigation would have shown should have never been brought. For these reasons, fees should be awarded for Favored's preparation of that motion to dismiss the second amended complaint.

### b.    P2i hid behind a long, untranslated document that did not support its claim

The Court should also grant fees for the translation costs Favored incurred to debunk the "smoking gun" P2i supposedly had in hand. In its Second Amended Complaint, and in an effort to overcome the time bar the Court indicated would doom P2i's claim, P2i alleged that Favored's 2021 financial disclosure "described the activities of Favored Defendants at a level of detail to which P2i was not previously privy or aware." *Id.* (citing SAC ¶¶ 224, 228). P2i's Second Amended Complaint based its entire argument for statute-of-limitations compliance on that document.

Despite that document being the linchpin of its trade-secrets case, P2i made it as opaque as possible for Favored to deal with. P2i did not pincite any of that document's hundreds of pages. P2i did not describe its contents with particularity. P2i did not file a copy of that document. And P2i did not translate it from the original Chinese. Order 9.

P2i knew that Favored would have two choices. Either Favored could blindly accept P2i's characterization of the document and not be able to challenge P2i's allegations on the pleadings, or Favored could translate that document, pore through it, provide a copy to the Court, and explain to the Court why it did not support P2i's position. A translation would have been necessary even assuming that Favored's in-house or outside attorney team could read Chinese because that document needed to be submitted to the Court and available for review. And so Favored was given the burden of translating that document and reviewing it. Because of the time and effort involved in translation, Favored sought P2i's agreement to an extension on its motion, ECF 69 ¶¶ 2–4, at which point P2i did not suggest it had already translated the document itself or offer to pay for the translation, McKeever Decl. ¶ 17.  After obtaining a translation, Favored attached a copy of that translation to its motion, *see* ECF 71-6; ECF 71-7; ECF 86 ("Order") at 9. The translated document

1  "[did] not stand for the premise advanced by P2i" and contained only generic technology-related

2  disclosures. Order 9–10.

3      P2i did not challenge that translation and did not object the Court considering it. Order 9

4  n.2. Nor did it dispute Favored's account of its substance. In its reply, P2i "sa[id] little in response"

5  regarding the translated document and "appear[ed] to abandon its importance" to the trade-secret

6  issue once its bluff was called. Order 10. It gave that document up completely, despite it being core

7  to its timeliness argument. But by that point, Favored had incurred more than $40,000 translating

8  it and significant attorney time reviewing it. *See* ECF 79-1 (Decl.) ¶ 3; ECF 79-3 (invoice).

9      **2.    P2i and its counsel acted in bad faith**

10     P2i's conduct fits the Ninth Circuit's bad-faith standard under 28 U.S.C. § 1927 or its in-

11  herent powers. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107–08 (9th Cir. 2002); *Fink*, 239

12  F.3d at 992, 994. P2i's trade-secret allegations were not designed to identify a dispute for adjudi-

13  cation; they were designed to harass Favored. That is clear because of the expansive, shifting-sands

14  approach that P2i took. When repeatedly pressed on the notice deficiencies in its complaints, it did

15  not make them *clearer*. It instead increasingly *obscured* them—providing ever-expansive lists and

16  citing lengthy documents—with the purpose of demanding discovery into Favored's sensitive in-

17  ternal secrets and exerting unwarranted leverage.

18     P2i was on notice that its trade-secret allegations were not clear. *Supra* at Sections II.A,

19  IV.A.1.a; ECF 60 (Tr. 24:2–7). Further, the Court provided P2i a clear, no-risk way to define its

20  trade secrets by identifying them under seal. ECF 60 (Tr. 27:2–19). P2i ignored that guidance alto-

21  gether. It took a different approach of doubling down on the problems with its first amended com-

22  plaint. P2i continued to name many broad possible categories of types of information—the very

23  thing the Court said was improper about its first complaint. In short, (1) P2i doubled down on a

24  problem the Court identified and (2) ignored a crystal-clear way to resolve that problem. The only

25  reasonable inference is bad faith.

26     P2i's bad faith is also evident by the way it wielded the untranslated document. It referenced

27  that document heavily in its second amended complaint. *See, e.g.*, SAC ¶¶ 224–25, 228–29, 232–

28  40. But it never *pincited* it, leaving Favored with two hills to climb: Favored had to translate the

document, and Favored had to wade through it to figure out which of the hundreds of pages supposedly supported P2i's allegations. None did, and P2i did not defend its reliance on the document when Favored pointed that out in response. Its bluff had been called and it had no answer. When Defendants met and conferred with P2i, P2i argued instead that Favored did not need to translate the document and in fact should not have. McKeever Decl. ¶ 17. When Favored sought an extension to translate the document, P2i said nothing. *Id.* That exemplifies P2i's bad faith: P2i wanted to use the document as a distraction without anyone looking behind the curtain.

The fact that the untranslated document did not support P2i, and that P2i abandoned it once challenged, underscores bad faith too. There are two possibilities, neither good. Either P2i *knew* that the document did not say what it said it did or P2i *decided not to check* what it said. Either way, pressing the argument was bad faith.

Finally, P2i's continual head-in-the-sand approach throughout its three rounds of pleadings confirm that it is not litigating in good faith. For one, P2i and its counsel persisted with a pattern of frivolous—or at minimum nonmeritorious—tort claims. In evident attempt to exert leverage and expand the scope of discovery, P2i tried tacking on unusual tort claims onto its patent and trade-secret allegations. First, P2i's raised a frivolous, nonexistent "federal common law unfair competition" claim that it would have known does not exist had it looked at basic hornbook law, ECF 25 at 14–15, and a state unfair-competition claim that was frivolous because P2i never pleaded an antitrust violation, ECF 25 at 18. Second, P2i persisted with a frivolous tortious-interference claim that was doomed because it was either preempted or because P2i failed to plead an element, ECF 40 at 21–24. Even after Favored warned P2i in its first motion to dismiss that its tort claims (unfair competition and tortious interference) were fatally deficient, P2i trudged onward with them rather than withdraw or amend them to address the missing elements. That persistence inflicted expenses on Favored unreasonably because Favored had to do the legal research that P2i did not bother to do itself and had to brief claims that were missing entire elements. Recklessly persisting with a frivolous or harassing position is evidence of bad faith. *See EscapeX*, 2024 WL 557729, at *1.

**B.**    **Fees are warranted under 28 U.S.C. § 1927 or this Court's inherent powers in connection with P2i's indirect and willful infringement allegations**

P2i's bad-faith conduct surrounding its indirect and willful infringement allegations also multiplied the proceedings and inflicted a needless burden on Favored and GN Audio. Accordingly, the Court should order P2i to compensate Favored and GN Audio for reasonable attorneys' fees in responding to those claims in its second amended complaint.

**1.**    **P2i and its counsel persisted with a pattern of frivolous, or at minimum nonmeritorious, indirect and willful infringement allegations**

P2i's initial complaint asserted causes of action of induced infringement, contributory infringement, and willful infringement, but P2i failed to plead supporting facts and failed to plead some elements in even a conclusory fashion.

For willful infringement, P2i's second amended complaint "[did] not include even a conclusory allegation of egregiousness." Order 16. That defect had persisted throughout all three iterations of its complaint, *see* ECF 71 at 23–25, despite Defendants pointing it out repeatedly, *see* ECF 25 at 11 (regarding original complaint); ECF 26 at 11–12 (same); ECF 40 at 14 (regarding first amended complaint); ECF 41 at 14–15 (same); ECF 70 at 14 (regarding second amended complaint); ECF 71 at 24–25 (same). P2i's original complaint simply pleaded a boilerplate list of the willfulness elements without identifying any factual conduct. ECF 1 ¶¶ 38, 54–56, 58, 98–99, 138–39, 193. The same thing happened with P2i's first amended complaint, ECF 38 ¶¶ 83, 100–01, 111, 244–45, 316–17, 395, despite Defendants having pointed out that flaw, ECF 25 at 11; ECF 26 at 11–12. It occurred again with P2i's second amended complaint, ECF 65 ¶¶ 152–53, 157, 249–50, 279–80, 340, despite Defendants' further warning, ECF 40 at 14; ECF 41 at 14–15. Likewise, P2i did not refine any of the allegations underlying the other elements of willful infringement:

*P2i's Failure to Improve Its Willful Infringement Allegations Against Favored*

| Element | Complaint (¶¶ 38, 98–99, 138–39, 193) | 1st Am. Complaint (¶¶ 83, 244–45, 316–17, 395) | 2nd Am. Complaint (¶¶ 279–80, 340) |
|---|---|---|---|
| Willful-ness/Intent | ✦ "have known of the existence of the P2i Patents, and their acts of infringement have been willful" (¶ 38) | ✦ "have known of the existence of the P2i Patents, and their acts of infringement have been willful" (¶ 83) | |

| | | | |
|---|---|---|---|
| | ❧ "infringement has been, and continues to be knowing, intentional, and willful" (¶¶ 98, 138)<br><br>❧ "infringement … has been and continues to be willful, intentional, and deliberate" (¶ 193) | ❧ "infringement has been, and continues to be knowing, intentional, and willful" (¶¶ 244,316)<br><br>❧ "infringement … has been and continues to be willful, intentional, and deliberate" (¶ 395) | ❧ "infringement has been, and continues to be knowing, intentional, and willful" (¶ 279)<br><br>❧ "infringement … has been and continues to be willful, intentional, and deliberate" (¶ 340) |
| Knowledge | Same as for induced infringement. | Same as for induced infringement. | Same as for induced infringement. |
| Egregiousness | None. | None. | None. |

### P2i's Failure to Improve Its Willful Infringement Allegations Against GN Audio

| Element | Complaint (¶¶ 54–56, 58, 98–99, 138–39, 193) | 1st Am. Complaint (¶¶ 100–01, 111, 244–45, 316–17, 395) | 2nd Am. Complaint (¶¶ 152–53, 157, 249–50, 279–80, 340) |
|---|---|---|---|
| Willfulness/Intent | ❧ "has known of the existence of the P2i Patents, and its acts of infringement have been willful" (¶ 54)<br><br>❧ "infringement has been, and continues to be knowing, intentional, and willful" (¶¶ 98, 138)<br><br>❧ "infringement … has been and continues to be willful, intentional, and deliberate" (¶ 193) | ❧ "has known of the existence of the P2i Patents" and its "acts of infringement have therefore been willful" (¶¶ 100–01)<br><br>❧ "infringement has been, and continues to be knowing, intentional, and willful" (¶¶ 244,316)<br><br>❧ "infringement … has been and continues to be willful, intentional, and deliberate" (¶ 395) | ❧ "has known of the existence of the P2i Patents" and its "acts of infringement have therefore been willful" (¶¶ 152–53)<br><br>❧ "infringement has been, and continues to be knowing, intentional, and willful" (¶¶ 249,279)<br><br>❧ "infringement … has been and continues to be willful, intentional, and deliberate" (¶ 340) |
| Knowledge | Same as for induced infringement. | Same as for induced infringement. | Same as for induced infringement. |
| Egregiousness | None. | None. | None. |

P2i also repeatedly asserted induced and contributory infringement without alleging facts or fixing glaring pleading defects. *See* ECF 71 at 15–19 (induced infringement); *id.* at 19–23 (contributory infringement).

Induced infringement is a theory under which a party infringes by actively inducing another party's direct infringement, with specific intent—including knowledge of the patent and knowledge of how the induced conduct infringes. P2i began by (1) failing to identify a third party's underlying direct infringement, (2) failing to plead acts of inducement, (3) failing to plead any facts showing

Favored or GN Audio's specific intent, and (4) failing to plead the requisite knowledge. ECF 25 at 7–9; ECF 26 at 6–9. P2i's first amended complaint did not improve anything. It again failed on all four fronts. ECF 40 at 9–11; ECF 41 at 8–11. And P2i's second amended complaint did no better. ECF 70 at 5–11; ECF 71 at 15–19. P2i continually based its knowledge allegations on the exact same facts that this Court found fell far short in dismissing the latest complaint. ECF 25 at 8–9; ECF 26 at 6–9. It never even *tried* to plead knowledge of infringement. ECF 71 at 16.

**P2i's Failure to Improve Its Induced Infringement Allegations Against Favored**

| Element | Complaint (¶¶ 35–36, 39–40, 136) | 1st Am. Complaint (¶¶ 72, 76–78, 238–40) | 2nd Am. Complaint (¶¶ 102–03, 127–28, 253, 277–79, 340) |
|---|---|---|---|
| Act of Inducement | ❧ "supplied … its customers … with the Infringing Products" (¶ 35) <br> ❧ "instruct others to make and use the Infringing Products" (¶ 136) | ❧ "supplied … its customers … with Infringing Products" (¶¶ 73, 80) <br> ❧ "instructs others to make, use, sell, and/or offer for sale the Infringing Products" (¶ 240) | ❧ "providing GN Audio with machine(s) configured to infringe" and "provide training and/or support in connection with the operation of such machine(s)" (¶ 278) |
| Knowledge | ❧ "knowledge and intent that its customers infringe" (¶ 36) <br> ❧ "aware of the P2i Patents, as evidenced by numerous proceedings" (¶ 36) <br> ❧ "knowledge of the P2i Patents is indisputable as evidenced at least by the [IPR] Proceedings" (¶ 39) | ❧ "knowledge and intent that its customers infringe" (¶ 76) <br> ❧ "aware of the P2i Patents, as evidenced by numerous proceedings" (¶ 77) <br> ❧ "knowledge of the P2i Patents is indisputable, as evidenced at least by the [IPR] Proceedings" (¶ 84) | ❧ "aware of the P2i Patents, as evidenced by numerous proceedings" (¶ 128) |

**P2i's Failure to Improve Its Induced Infringement Allegations Against GN Audio**

| Element | Complaint (¶¶ 57, 97, 136) | 1st Am. Complaint (¶¶ 100, 102–05, 238–40, 313–15) | 2nd Am. Complaint (¶¶ 152, 154–56, 247–48, 340) |
|---|---|---|---|
| Act of Inducement | ❧ "supplied … its vendors … with devices and components to be treated" (¶ 57) <br> ❧ "inducing others to use infringing articles and methods " (¶ 97) "instructs others to make and use the Infringing | ❧ "actively and knowingly inducing others, including Favored Defendants, to import the Infringing Products" (¶¶ 104–05) <br> ❧ "inducing others to use infringing articles and methods" (¶ 239) | ❧ "by using, selling, offering for sale, and/or importing the GN Audio Products and/or providing instructions, support, and or other such resources that facilitate the purchase and/or use of the GN Audio Products" |

| | | | |
|---|---|---|---|
| | Products by operating in accordance with their specification" (¶ 97)<br>❧ "instruct others to make and use the Infringing Products" (¶ 136) | ❧ "instructs others to make, use, sell, and/or offer for sale the Infringing Products or GN Audio Products" (¶ 240)<br>❧ "instructing others, including Favored Defendants, to use infringing articles and methods" (¶ 314)<br>❧ "instructs others, including Favored Defendants, to make and use the Infringing Products" (¶ 315) | (¶ 156)<br>❧ "by selling the GN Audio Products with instructions" (¶ 247)<br>❧ "(1) providing instructions or information to explain how to use the GN Audio Products in an infringing manner (including, for example, at trade shows, via promotional videos, etc.); and (2) touting these infringing uses of the GN Audio Products in GN Audio's advertisements and/or other public content" (¶ 248) |
| Knowledge | ❧ "known of the existence of the P2i Patents" (¶ 54)<br><br>❧ "knowledge of P2i Patents is indisputable as evidenced at least by the GN Hearing Letter" (¶ 56) | ❧ "known of the existence of the P2i Patents since at least March 1, 2023" (¶ 100)<br><br>❧ "knowledge of P2i's intellectual property is indisputable as evidenced at least by the GN Hearing Letter" (¶ 103) | ❧ "known of the existence of the P2i Patents since at least March 1, 2023 and/or the filing date of the complaint" (¶ 152)<br>❧ "knowledge of P2i's intellectual property is indisputable … as evidenced at least by the GN Hearing Letter" (¶ 155) |

Contributory infringement is a theory based on selling special-purpose components that do not themselves infringe but are special-made to do so. P2i declined to identify any such components in any of its complaints. It also failed to even try to plead how any of the (unidentified) components could be special-purpose ones like the law requires. ECF 70 at 11–12; ECF 71 at 19–23. Indeed, P2i's story changed from complaint to complaint, even if its failure to plead required elements did not. Its original complaint conflated the accused directly infringing products with the special-purpose components (and didn't identify either one). *See* ECF 25 at 9–10. And the original complaint's prayer for relief accused GN Audio of contributory infringement, even though the body of its complaint contained no allegations at all (even conclusory ones) about that cause of action. *See* ECF 26 at 9. The first amended complaint failed to improve the identification of products/components, *see*

1    ECF 40 at 11–12, but it added conclusory allegations against GN Audio without adding supporting

2    facts. And in its second amended complaint, P2i jettisoned its claim against GN Audio and alleged

3    that (unidentified) components and general-purpose coating machines fit the bill. ECF 71 at 21–22.

4    A consistent theme throughout was that P2i failed to provide any basis how anything was a material

5    part of the invention, especially made to infringe, and lacked substantial noninfringing uses—all

6    required elements:

### *P2i's Failure to Improve Its Contributory Infringement Allegations Against Favored*

| Element | Complaint (¶¶ 37, 137) | 1st Am. Complaint (¶¶ 79–82, 241) | 2nd Am. Complaint (¶¶ 97–101, 254, 273–76) |
|---|---|---|---|
| Contributory Act | ☙ "selling or offering to sell **electrical components**" (¶ 37) <br> ☙ "supplied … its customers … with Infringing Products" (¶ 37) <br> ☙ "selling or offering to sell components" (¶ 137) | ☙ "selling or offering to sell **electrical components**" (¶ 79) <br> ☙ "supplied … its customers … with Infringing Products" that customer "incorporates … into its own products (¶¶ 80–81) <br> ☙ ¶ 241 (boilerplate) | ☙ "selling or offering to sell **nano-coating machines** … to GN Audio" (¶¶ 97, 273) <br> ☙ "providing nano-coating machines that are configured to perform the Infringing Method" (¶ 98) <br> ☙ ¶ 254 (boilerplate) |
| Material Part of the Invention | None. | None. | ☙ "Such nano-coating machines are a material or apparatus for use in practicing a patented process … and constitute a material part of the invention." (¶¶ 99, 274) <br> ☙ ¶ 254 (boilerplate) |
| Knowing Especially Made/ Adapted | ☙ electrical components "especially made or especially adapted for use in practicing the invention of the '087 Patent " (¶ 137) | ☙ electrical components "especially made or especially adapted for use in practicing the invention of the '087 Patent " (¶ 79) <br><br><br> ☙ ¶ 241 (boilerplate) | ☙ "such nano-coating machines are especially made or especially adapted for use in an infringement" (¶¶ 100,275) <br> ☙ "designed and configured these machines … specifically to perform the Infringing Method" (¶ 101) <br> ☙ ¶ 254 (boilerplate) |
| Lack of Substantial Noninfringing Use | ☙ electrical components "not a staple article or commodity or commerce suitable for substantial | ☙ electrical components "not a staple article or commodity or commerce suitable for substantial | ☙ "coating machines are not a staple article or commodity of commerce suitable for substantial |

| | non-infringing use " (¶ 137) | non-infringing use" (¶ 79) ᪗ ¶ 241 (boilerplate) | noninfringing use" (¶¶ 101, 276) ᪗ ¶ 254 (boilerplate) |
|---|---|---|---|
| Knowledge | Same as for induced infringement. | Same as for induced infringement. | Same as for induced infringement. |

***P2i's Failure to Improve Its Contributory Infringement Allegations Against GN Audio***

| Element | Complaint (Prayer for Relief) | 1st Am. Complaint (¶¶ 106–09, 242) | 2nd Am. Complaint (Prayer for Relief) |
|---|---|---|---|
| Contributory Act | None. | ᪗ "providing Favored Defendants with electronic or **electrical devices and/or electronic or electrical components** used to make the Infringing Products" (¶ 106) (emphasis added) ᪗ "supplied … its vendors … with devices and components to be treated … thereby yielding Infringing Products" (¶ 108) ᪗ ¶ 242 (boilerplate) | None. |
| Material Part of the Invention | None. | None. | None. |
| Knowing Especially Made/ Adapted | None. | ᪗ ¶ 242 (boilerplate) | None. |
| Lack of Substantial Noninfringing Use | None. | ᪗ ¶ 242 (boilerplate) | None. |
| Knowledge | Same as for induced infringement. | Same as for induced infringement. | Same as for induced infringement. |

This all confirms the minimal effort P2i took to advance its claim—all the while superficially retooling its complaint to put up a costly smokescreen. No one could reasonably think that failing to include necessary elements of the cause of action could succeed. In short, Favored and GN Audio should not have had to exert the effort responding to the indirect- and willful-infringement allegations in P2i's second amended complaint because P2i did not meaningfully try to fix anything.

### 2.    P2i and its counsel acted in bad faith

Again, P2i's conduct meets the standards required under either 28 U.S.C. § 1927 or inherent powers. The bad-faith facts explained above for trade secrets are relevant here too, because they inform P2i's overall course of conduct in this litigation. *Supra* Section IV.A.2. But on top of that, P2i's failure to either withdraw or correct the serious flaws with its infringement allegations (such as failure to include even a conclusory pleading of egregious conduct) amounted, at minimum, to pressing frivolous or harassing theories at least recklessly. *Fink*, 239 F.3d at 994; *see EscapeX IP LLC v. Google LLC*, No. 22-cv-8711-VC, 2024 WL 557729, at *1 (N.D. Cal. Feb. 12, 2024) (counsel's "refusal to withdraw or amend their motion when informed by [opposing] counsel of its numerous problems" sufficed under § 1927 standard).

### C.    Fees are warranted in connection with filing this fee motion

To ensure proper deterrence, the Court should also award reasonable attorneys' fees in connection with this motion. Section 1927 "allows an award of attorneys' fees incurred in obtaining a sanctions award." *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 632 (9th Cir. 2017).

Those fees are particularly appropriate because P2i and its counsel have admitted no responsibility even after getting its hand caught in the cookie jar. When the parties conferred, P2i's counsel would not even agree to a midway proposal, like Favored's modest request that P2i pay its translation costs. Instead, P2i suggested—with a straight face—that Favored should not have translated the document and apparently did not need to review its contents. McKeever Decl. ¶ 17. That kind of behavior should not be encouraged. Should the Court grant the requested relief, Defendants will provide a declaration setting forth the fees incurred in connection with this motion.

### D.    The fees Favored and GN request are reasonable

Favored and GN Audio request $226,384.09 in fees and costs, in addition to the amounts incurred in bringing this motion. *See* McKeever Decl. ¶ 21. That amount includes reasonable attorneys' fees as well as costs associated with document translation. *Id.* ¶¶ 14–21. The attorney-fee amount has been calculated based on reasonable hours worked and billing rates as stated in the attached declaration. *Id.* ¶¶ 2–21.

The requested amount is consistent with amounts awarded in patent litigation in this district

and elsewhere. For example, in *EscapeX IP LLC v. Google LLC*, the plaintiff asserted one patent against a single product, and there was no motion practice on the merits. No. 22-cv-8711-VC, 2023 WL 5257691, at *1–2 (N.D. Cal. Aug. 16, 2023). Even so, fees of $140,615.73 incurred prior to the fee motion and $50,686.45 associated with the fee motion was "facially reasonable," and the Court awarded $191,302.18 accordingly. *Id.* at *2. The Court further awarded $63,525.30 for responding to an additional frivolous motion. *EscapeX IP LLC v. Google LLC*, No. 22-cv-8711-CV, 2024 WL 557729, at *1 (N.D. Cal. Feb. 12, 2024). And in *VDPP, LLC v. Volkswagen Group of America, Inc.*, No. 23-cv-2961-LHR, at *1 (S.D. Tex. July 11, 2024), the plaintiff asserted just one patent against a single product. The court awarded fees after granting a motion to dismiss and denying a frivolous motion to amend that judgment. *Id.* at *1–2, *4; see VDPP, LLC v. Volkswagen Group of America, Inc.*, No. 23-cv-2961-LHR, ECF No. 52 (S.D. Tex. Aug. 13, 2024) (awarding $207,543.60 in fees and considering same reasonable). Moreover, the rates billed here are consistent with the specialization and experience of the attorneys involved. McKeever Decl. ¶¶ 7–12.

This case involves significantly more work, including two patents, a suite of legal theories, numerous accused products, shifting allegations, a lengthy complaint, and the amount is proportional to that amount of work created by P2i and its counsel. McKeever Decl. ¶ 12. Further, Defendants exerted reasonable and necessary efforts on the motions in view of the manufactured complexity of the second amended complaint. *Id.* ¶ 14.

## V.    CONCLUSION

Favored and GN Audio respectfully request the Court order P2i and its counsel to compensate them for reasonable attorneys' fees and costs incurred in (1) responding to P2i's trade-secret allegations in the second amended complaint, (2) translating the Chinese-language document, and (3) responding to P2i's indirect- and willful-infringement allegations in the second amended complaint (collectively, $226,384.09), as well as (4) bringing this motion.

1     Dated: November 4, 2024                    **PERKINS COIE LLP**

2

3                                               By:*/s/ Patrick J. McKeever*
                                                     Matthew C. Bernstein, Bar No. 199240
                                                     MBernstein@perkinscoie.com
4                                                    Patrick J. McKeever, Bar No. 268763
                                                     PMcKeever@perkinscoie.com
5                                                    PERKINS COIE LLP
                                                     11452 El Camino Real, Suite 300
6                                                    San Diego, California 92130-2080
                                                     Telephone:    858.720.5721
7                                                    Facsimile:    858.720.5799

8                                                    Andrew T. Dufresne (*pro hac vice*)
                                                     ADufresne@perkinscoie.com
9                                                    PERKINS COIE LLP
                                                     33 E. Main Street, Suite 201
10                                                   Madison, WI 53703-3095
                                                     Telephone:    608.663.7492
11                                                   Facsimile:    608.283.4492

12                                                   Matthew A. Lembo (*pro hac vice*)
                                                     MLembo@perkinscoie.com
13                                                   PERKINS COIE LLP
                                                     1155 Avenue of the Americas, 22nd Floor
14                                                   New York, NY 10036-2711
                                                     Telephone:    212.262.6900
15                                                   Facsimile:    212.977.1649

16                                                   Jonathan I. Tietz (*pro hac vice*)
                                                     JTietz@perkinscoie.com
17                                                   PERKINS COIE LLP
                                                     700 13th Street, NW, Suite 800
18                                                   Washington, D.C. 20005-3960
                                                     Telephone:    202.654.6200
19                                                   Facsimile:    202.654.6211

20                                                   *Attorneys for Defendants*
                                                     *Favored Tech USA Corporation,*
21                                                   *Jiangsu Favored Nanotechnology Co., Ltd.*
                                                     *and GN Audio USA Inc.*

22

23

24

25

26

27

28