UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| P2I LTD., <br><br> Plaintiff, <br><br> v. <br><br> FAVORED TECH USA CORPORATION, et al., <br><br> Defendants. | Case No. 23-cv-01690-AMO <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND TERMINATING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT** <br><br> Re: Dkt. Nos. 116, 130 |

This is a patent infringement dispute. The motion for judgment on the pleadings of Defendants Favored Tech USA Corporation, Jiangsu Favored Nanotechnology Co., Ltd., and GN Audio USA, Inc. ("Defendants") was heard before this Court on May 6, 2025. Though Plaintiff P2i Ltd. ("P2i") brought suit to challenge two patents in this case, Defendants' motion for judgment on the pleadings only challenges one of them. Having read the papers filed by the parties regarding the motion for judgment on the pleadings and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** Defendants' motion for the reasons stated below.

Also before the Court is a motion for leave to file an amended complaint from P2i. *See* ECF 130. That motion is fully briefed and suitable for decision without oral argument. Accordingly, the motion is VACATED from the August 28, 2025, hearing calendar. *See* Civil L.R. 7-1(b), Fed. R. Civ. Pro. 78(b). The other motions on calendar for August 28, 2025, remain set for hearing. *See* ECF 139. Having read the parties' papers regarding the motion for leave to amend and carefully considered their arguments and the relevant legal authority, the Court hereby **TERMINATES** that motion subject to resubmission in accordance with this order for the reasons stated below.

**I.     BACKGROUND**

United States Patent No. 8,389,070 (the " '070 patent"), issued March 5, 2013, is titled "Coating of a Polymer Layer Using Low Power Pulsed Plasma in a Plasma Chamber of a Large Volume." McKeever Decl., Ex. 1 ('070 patent, ECF 116-2) at 1. The '070 patent relates to plasma deposition, a technique for coating materials (or "substrates") with a polymer layer:

> Using this method, plasmas are generated from organic molecules [i.e., monomer], which are subjected to an electrical field. When this is done in the presence of a substrate, the radicals and molecules of the compound in the plasma polymerise in the gas phase and react with a growing polymer film on the substrate.

*Id.* at 1. The '070 patent states that "[p]lasma deposition techniques have been quite widely used for the deposition of polymeric coatings onto a range of surfaces." *Id.* at 1. The '070 patent discusses a prior art patent application filed in 1997 and published in 1998. *Id.* at 1 ("Badyal"). Portions of the Badyal prior art are copied verbatim into the specification of the '070 patent. *Compare* McKeever Decl., Ex. 1 at 1 *with id.*, Ex. 2 at 1-2. Prior art patents describe that low power, pulsed plasma should be used to avoid "fragmenting" the monomer and losing functional groups one would prefer to retain in the resulting polymer. *See id.*, Ex. 2, Ex. 4, Ex. 5, Ex. 7 (Winther-Jensen), Ex. 8 (Christensen).

The '070 patent acknowledges that Badyal's process "produce[d] good oil and water repellent coatings . . . using small-scale units of 470 cm$^3$" but suggests "commercial applications" require "larger scale production units." McKeever Decl., Ex. 1 at 2. According to the patent, "replication" of Badyal's process "in larger chambers did not produce satisfactory results." *Id.* at 2. The '070 patent describes power density parameters, particular monomers used by the inventors, and a host of variables such as carrier gases, flow rates, pressure, and temperature. *Id.* at 2-6. The patent also describes and depicts apparatuses for use in performing plasma deposition. *Id.* at 6-9; Figs. 1-3.

The Court assumes familiarity with the procedural posture of the case at the time of this Order. Nonetheless, several additional pending motions bear noting because this Order bears on the outcome of the other motions. In addition to Defendants' motion for judgment on the pleadings, which is the subject of this Order, Defendants move for attorney's fees and costs related

to responding to certain allegations in the Second Amended Complaint, ECF 90, and Defendants move for sanctions under Federal Rule of Civil Procedure 11, ECF 136.  For its part, P2i moves for leave to file a third amended complaint that eliminates the claim for patent infringement targeted at the other patent-in-suit, U.S. Patent 11,041,087 (the " '087 patent").  *See* ECF 130.

## II.     DISCUSSION

The Court first considers Defendants' motion for judgment on the pleadings.  Based on its conclusions, the Court then briefly addresses P2i's motion for leave to file an amended complaint.

### A.     Motion for Judgment on the Pleadings

Defendants move for judgment on the pleadings on the basis that P2i's '070 patent is ineligible for patentability because it seeks to patent an abstract idea, a subject matter ineligible for patent protection.  "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citing *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 979 (9th Cir. 1999)).  A Rule 12(c) motion is reviewed using the same standard as a Rule 12(b) motion. *Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  Accordingly, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

Under Section 101 of the Patent Act, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor . . . ." 35 U.S.C. § 101.  The Supreme Court "has long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  These three categories of subject matter are excepted from patent-eligibility because "they are the basic tools of scientific and technological work," which are "free to all [people] and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66,

3

71 (2012) (citations omitted). The Supreme Court explained that allowing patent claims for such purported inventions would "tend to impede innovation more than it would tend to promote it," thereby thwarting the primary object of the patent laws. *Id.* However, the Court also cautioned that "[a]t some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 573 U.S. at 217 (alteration, internal quotation marks, and citation omitted). Accordingly, courts must "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Id.*

In *Alice*, the leading case on patent-eligible subject matter under Section 101, the United States Supreme Court refined the "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts" originally set forth in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. at 77. *See Alice*, 573 U.S. at 217. This analysis, generally known as the "*Alice*" framework, proceeds in two steps:

> First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, "[w]hat else is there in the claims before us?" To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. We have described step two of this analysis as a search for an " 'inventive concept' " – i.e., an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."

*Id.* at 217-18 (alterations in original) (citations omitted); *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (describing "the now familiar two-part test described by the Supreme Court in *Alice*").

### 1. *Alice* Step One - Abstraction

There exists no bright-line test separating abstract ideas from concepts that are sufficiently concrete so as to require no further inquiry under the first step of the *Alice* framework. *See Alice*, 573 U.S. at 221 (noting that the Court "need not labor to delimit the precise contours of the 'abstract ideas' category in this case"); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) (same). As a result, in evaluating whether particular claims are directed to

4

1  patent-ineligible abstract ideas, courts have generally begun by "compar[ing] claims at issue to
2  those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v.*
3  *Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).  The court's task is thus not to determine
4  whether claims merely involve an abstract idea at some level, *see id.*, but rather to examine the
5  claims "in their entirety to ascertain whether their character as a whole is directed to excluded
6  subject matter," *Internet Patents*, 790 F.3d at 1346.
7        Here, Defendants focus their challenge on Claim 1 of the '070 patent, upon which all the
8  other claims depend.  *See* Opp. at 11-12 (acknowledging Claims 2-17 as dependent on Claim 1).
9  Claim 1, considered in light of the specification or in context, makes clear that "the focus of the
10 claimed advance over the prior art" is to conduct plasma deposition at scale or en masse – the
11 focus is on scaling the plasma deposition technique up to a large chamber suitable for commercial
12 applications.  Moreover, the '070 patent specification expressly distinguishes the prior art based
13 on the size of the chamber.  Coulson, one of the inventors, conceded during prosecution of the
14 '070 patent that "the process of [Badyal] is similar in nature to the process recited in the claims" of
15 the '070 patent.  McKeever Decl., Ex. 9 (Coulson Decl.) at 2.
16       Badyal's process is distinguished from the process proposed in the '070 patent not based
17 on its production of inferior coatings but because it used "small-scale units" that are inadequate for
18 "most commercial applications."  McKeever Decl., Ex. 1 at 2.  Indeed, Coulson disputed whether
19 Badyal's process "is suitable for use on an industrial scale, where much larger volume chambers
20 are required to accommodate larger products for coating or for greater through-put of smaller
21 products."  *Id.*, Ex. 9 at 2.  The requirement that the "plasma zone ha[ve] a volume of at least
22 0.5 $m^3$" is the only specification distinguishing the '070 patent from the "small-scale"
23 implementations described in Badyal and other prior art references.  *Id.*, Ex. 1 at 10.  Moreover,
24 the face of the patent confirms that every other limitation in Claim 1 of the '070 patent was routine
25 and conventional in comparison to Badyal and the other prior art.  *Id.*; *see, e.g.*, *TLI Commc'ns*,
26 823 F.3d at 611 (discounting certain "concrete, tangible components" in claim at *Alice* step one
27 where patent specification treated them as part of generic environment for carrying out the abstract
28 idea).

5

1    Defendants, relying on the reasoning above, argue that mass production is abstract. *See*
2    Mot. at 6-9. P2i disagrees. *See* Opp. at 5 n.1 ("Defendants cite no authority in support of their
3    argument that 'mass production' is an 'abstract idea.' As best understood, it is not."). However,
4    P2i fails to cite any legal or factual support for its contention that mass production is not an
5    abstract idea. While the Federal Circuit has found that claims directed to a "new and useful
6    technique" for performing a particular task were not abstract, *see, e.g., Thales Visionix Inc. v.
7    United States*, 850 F.3d 1343, 1349 (Fed. Cir. 2017) (holding that "claims directed to a new and
8    useful technique for using sensors to more efficiently track an object on a moving platform" were
9    not abstract), that does not salvage Claim 1. P2i dresses up its patent with technical terms and
10   ranges of specifications, *see* Opp. at 5-8, but the foundational premise of the '070 patent is to
11   apply the idea of mass production in the context of plasma deposition, using known processes and
12   a machine with expanded volume.
13   That Claim 1 applies the concept of mass production to the known technique of plasma
14   deposition does not make it any less abstract. *Bilski v. Kappos*, 561 U.S. 593, 612 (2010)
15   ("limiting an abstract idea to one field of use" does not "make the concept patentable"); *see also,
16   e.g., OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362-63 (Fed. Cir. 2015) (that claims
17   limited abstract idea of price optimization to "the e-commerce setting [did] not make them any
18   less abstract"). Simply put, plasma deposition at the scale of mass production is not a "new and
19   useful technique." *Cf. Thales Visionix*, 850 F.3d at 1349; *Rapid Litig. Mgmt. Ltd. v. CellzDirect,
20   Inc.*, 827 F.3d 1042, 1048, 1050 (Fed. Cir. 2016) (holding that claims directed to "a new and
21   useful laboratory technique for preserving hepatocytes," a type of liver cell, were not abstract).
22   Instead, P2i's '070 patent appears to accomplish little more than adopting the technique from the
23   prior art and expanding its scale. Because Claim 1, applying the known process of plasma
24   deposition at volume, is directed to the abstract idea of mass production, the analysis turns to the
25   second step in the *Alice* test.

### 2. *Alice* Step Two – Inventive Concept

27   A claim drawn to an abstract idea is not necessarily invalid if the claim's limitations –
28   considered individually or as an ordered combination – serve to "transform the claims into a

6

patent-eligible application." *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). The second step of the *Alice* analysis is a search for an "inventive concept," through which courts examine whether the claim contains an element or combination of elements that "ensure[s] that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 218 (citation omitted). "It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea" where those components simply perform their "well-understood, routine, conventional" functions. *TLI Commc'ns LLC*, 823 F.3d at 613; *see also id.* (ruling that "telephone unit," "server," "image analysis unit," and "control unit" limitations were insufficient to satisfy *Alice* step two where claims were drawn to abstract idea of classifying and storing digital images in an organized manner). "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that "must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). This inquiry "goes beyond what was simply known in the prior art." *Id.* at 1369.

P2i avers in substantial part that Claim 1 presents a specific, inventive process to accomplish plasma deposition. *See* Opp. at 6-7 (asserting "Claim 1's method for depositing a polymeric material onto a substrate encompasses both a specific process ('introducing a monomeric material in a gaseous state . . . , igniting a glow discharge . . . , and applying a voltage as a pulsed field . . . for a sufficient period of time to allow a polymeric layer to form on the surface of the substrate . . .') and specific machinery ('. . . a plasma deposition chamber in which a plasma zone has a volume of at least 0.5 $m^3$, . . . and applying a voltage as a pulsed field, at a power of from 0.001 to 500 w/$m^3$. . .')"). Though P2i describes these provisions as specific, they appear instead to be vague and generalized.

Comparison to the prior art demonstrates the generality and lack of inventiveness in Claim 1. For example, though Claim 1 proposes "introducing a monomeric material in a gaseous state into a plasma deposition chamber in which a plasma zone has a volume of at least 0.5 $m^3$," plasma deposition always involves introducing monomeric material in a gaseous state into a plasma

7

deposition chamber. *See, e.g.*, Ex. 2 (Badyal) at 12; Ex. 3 (N.A.S.A.) at 2. Similar, though Claim 1 instructs "igniting a glow discharge within said chamber," plasma deposition always involves igniting a glow discharge. *See, e.g.*, Ex. 2 (Badyal) at 8; Ex. 3 (N.A.S.A.) at 2; Ex. 4 (Yasuda, 1977) at 81, Synopsis. Moreover, P2i's claim of "specific machinery" falls flat because the only specific hardware P2i identifies in the Claim is "a plasma deposition chamber in which a plasma zone has a volume of at least 0.5 $m^3$," a specification that the '070 patent does not introduce nor build upon. Opp. at 7. Claim 1 further requires "applying a voltage as a pulsed field, at a power of from 0.001 to 500 w/$m^3$ for a sufficient period of time to allow a polymeric layer to form on the surface of the substrate," but applying low power, pulsed plasma during deposition was a well-known method to avoid fragmenting the monomer, a method that was included in the prior art. *See, e.g.*, Ex. 4 (Yasuda, 1977) at 81, Synopsis; Ex. 2 at 8-9 (Badyal). Indeed, Claim 1 proposes a broad range of power densities, from 0.001 to 500 w/$m^3$, that is less specific and inclusive of the densities proposed in the prior art. *See* Ex. 7 (Winther-Jensen) at 10 (power density of 10 mW/l, or 10 W/$m^3$); Ex. 8 (Christensen) at 21 (same); Ex. 2 (Badyal) at 11, 16 (an average pulsed power of .04 W and a chamber volume of 470$cm^3$, which yields a power density of 85.1 W/$m^3$). Claim 1 thus reproduces the prior art without an inventive concept.

P2i argues that "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." Opp. at 10 (quoting *Bascom*, 827 F.3d at 1341). While this may be true, "the district court need not accept a patent owner's conclusory allegations of inventiveness." *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1379 (Fed. Cir. 2022). Rather, "[o]nly 'plausible and specific factual allegations that aspects of the claims are inventive are sufficient.' " *Id.* at 1379. Here, P2i does not advance any factual allegations of inventiveness. Rather, P2i's relies on the USPTO examiner's finding that the "recorded prior arts do not teach performing a polymerization process with a power density 0.001 to 500 W/$m^3$ in a greater than 0.5 $m^3$ chamber." Opp. at 10 (quoting '070 Patent Notice of Allowance (ECF 116-7) at 9) (emphasis omitted). But the large-volume chamber limitation – the focus of P2i's contention that the '070 patent reaches beyond the prior art – reflects the abstract idea of mass production and, thus, cannot serve as the basis for Claim 1's purported inventive concept. *BSG Tech LLC v.*

8

1  *Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept."); *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1370 (Fed. Cir. 2024), cert. denied, No. 24-827, 2025 WL 1151241 (Apr. 21, 2025) ("Receiving and displaying information is the abstract idea we identified at step one" and thus could not "transform that idea into significantly more."); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 774 (Fed. Cir. 2019) (that charging stations were "network-controlled" could not supply inventive concept where "network control [wa]s the abstract idea itself").  Even if the large-volume chamber limitation is viewed in combination with the power densities identified within Claim 1, "from 0.001 to 500 w/m$^3$," the expansive range of power densities does not present an inventive concept that survives *Alice*'s second step.  Claim 1, rather than improving on the prior art of plasma deposition techniques, focuses on the conceptual goal or end result of using plasma deposition successfully on a commercial scale.

P2i argues further that the PTAB declined to invalidate the '070 patent claims under Section 102 or 103 in the IPR proceeding.  Opp. at 10.[1]  But P2i's argument improperly conflates Section 102's test for novelty with the issue at bar, subject matter eligibility under Section 101.  It is not "enough for subject-matter eligibility that claimed techniques be novel and nonobvious in light of prior art, passing muster under 35 U.S.C. §§ 102 and 103" *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (citations omitted); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("[A] claim for a *new* abstract idea is still an abstract idea." (emphasis in original)).  Contrary to P2i's argument regarding the import of the PTAB's assessment, "the PTAB's assessment of validity under §§ 102 and 103 is irrelevant to the Court's assessment under § 101." *MyMail, Ltd. v. OoVoo, LLC*, 613 F. Supp. 3d 1142, 1171 (N.D. Cal.

---

[1] P2i cites an earlier decision of the Patent Trial and Appeal Board ("PTAB") in support of the premise that the PTAB found the claimed process at bar actually improved on prior art plasma deposition processes. Opp. at 10.  This mischaracterizes the PTAB's decision and thus fails to persuade.  The language P2i cites comes from a section that merely introduces and summarizes the patent using the patent's disclosures. *Favored Tech Corp. v. P2i Ltd.*, No. IPR2020-00478, 2021 WL 3729332, at *1 (P.T.A.B. Aug. 23, 2021) ("The '070 patent indicates that its method . . . produces layers that have good properties at power density levels that are unexpectedly lower than those conventionally used in plasma deposition processes.") (citing '070 patent at 2).

2020), aff'd, No. 2020-1825, 2021 WL 3671364 (Fed. Cir. Aug. 19, 2021); *see also, e.g.*, *Broadcom Corp. v. Netflix Inc.*, 677 F. Supp. 3d 1010, 1025 (N.D. Cal. 2023) ("merely citing the result of a PTAB proceeding that was directed to a different inquiry is not enough" to demonstrate patent eligibility). P2i's reference to the PTAB proceedings in which it prevailed does not alter this Court's analysis of the distinct inquiry into patentability.

To the extent P2i contends that Defendants' motion for judgment on the pleadings should be denied because a factual dispute exists as to whether Claim 1's elements were routine and conventional, that argument also fails. Patent eligibility is not an issue that resists determination at this stage; rather, the Section 101 "inquiry 'may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1314 (Fed. Cir. 2021) (quoting *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018)). More importantly, P2i does not identify any particular limitations in the Claim or evidence in the patent itself that gives rise to a factual dispute regarding subject matter eligibility at the pleadings stage. *See, e.g.*, *Receivership Est. of AudienceScience Inc. v. Google LLC*, No. 22-CV-04756-EJD, 2024 WL 1975473, at *3 (N.D. Cal. May 2, 2024) (rejecting similar "fact disputes" argument where the plaintiffs failed to "identify any factual allegations in the Complaint or the Patents-in-Suit that preclude resolution of a § 101 motion").

In sum, Claim 1 does not include individual elements or an ordered combination of elements sufficient to introduce an inventive concept that " 'transform[s] the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 218 (quoting *Mayo*, 566 U.S. at 78-79).

\*   \*   \*

The two-step *Alice* test shows that the primary claim (Claim 1) and thus the remaining, admittedly dependent, claims of the asserted '070 patent fails as ineligible under Title 35 U.S.C. § 101. Based on the ineligibility of the patent, Defendants are entitled to judgment on the pleadings as to the first cause of action in the operative Second Amended Complaint, infringement of the '070 patent.

### B. Motion For Leave to File Amended Complaint

Separate from Defendants' motion for judgment on the pleadings, P2i filed a motion for leave to file a third amended complaint. P2i's proposed third amended complaint abandons the cause of action for infringement of the '087 patent, leaving only causes of action for infringement of the '070 patent and misappropriation of trade secrets. *See* ECF 130; *see also* ECF 130-3 (redline version of proposed amended complaint). In light of the Court's determination of the '070 patent's ineligibility reached above, the proposed third amended complaint cannot stand as proffered. The Court accordingly TERMINATES P2i's motion for leave to file an amended complaint subject to resubmission. The Court does not now rule on any of Defendants' arguments regarding the proposed amendments. *See* ECF 132. Instead, the Court instructs the parties to meet and confer about any proposed amendment, and Plaintiff's counsel shall submit a declaration describing meet and confer efforts made prior to the submission of any renewed motion for leave to amend. Finally, because P2i appears to abandon one of its patent causes of action through its effort to amend the complaint and the Court found the other patent cause of action invalid, the Court VACATES remaining deadlines and hearings related to claim construction.

### III. CONCLUSION

For the foregoing reasons, including the unpatentability of Claim 1 of the '070 patent, the Court **GRANTS** Defendants' motion for judgment on the pleadings as to Count Two of P2i's operative Second Amended Complaint, including any allegations that rely on the '070 patent. The Court **TERMINATES** P2i's motion for leave to file a further amended complaint subject to resubmission consistent with this order. Good cause appearing, the Court **GRANTS** Defendants' administrative motion to seal portions of their brief and supporting materials in opposition to the motion for leave to amend. ECF 131. The Court **VACATES** remaining deadlines and hearings related to claim construction.

//
//
//
//

11

Defendants' motion for attorney's fees and costs, ECF 90, as well as their motion for sanctions pursuant to Federal Rule of Civil Procedure, remain set for hearing at 2:00 p.m. on August 28, 2025.

**IT IS SO ORDERED.**

Dated: June 20, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

12