UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| P2I LTD.,<br><br>        Plaintiff,<br><br>   v.<br><br>FAVORED TECH USA CORPORATION, et al.,<br><br>        Defendants. | Case No. 23-cv-01690-AMO<br><br>**ORDER GRANTING MOTION FOR ATTORNEY'S FEES PURSUANT TO TITLE 25 U.S.C. § 285 AND THE COURT'S INHERENT AUTHORITY**<br><br>Re: Dkt. No. 168 |

This is a patent dispute. Defendants Favored Tech USA Corporation, Jiangsu Favored Nanotechnology Co., Ltd. (together, "Favored"), and GN Audio USA, Inc. (all together, "Defendants") prevailed on each of Plaintiff P2i, Ltd.'s ("P2i") causes of action. Defendants' motion for attorney's fees pursuant to Title 25 U.S.C. § 285 and the Court's inherent authority was heard before this Court on February 5, 2026. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, and good cause appearing, the Court hereby **GRANTS** Defendants' motion for the following reasons.

I.      **BACKGROUND**

     **A.      The Patents-in-Suit**

P2i asserts two patents in this case. The first is U.S. Patent No. 8,389,070 (the " '070 patent"), which claims a "method for depositing a polymeric material onto a substrate" (in other words, coating something) by generating a "plasma" of monomer material that would react and form a polymer coating. The purported advance of the '070 patent, however, was scaling up the reaction – the claimed method used a larger chamber capable of creating a "plasma zone [of] a

volume of at least 0.5 m$^3$" – suited for larger scale, commercial applications. *See generally* Dkt. No. 116.

The second patent is U.S. Patent No. 11,041,087 (the " '087 patent"), which claims a coating for electronic devices created from a monomer with a specific molecular structure, as well as a "crosslinking" reagent with a specific molecular structure that helps the monomers bind together to form a polymer coating. *See, e.g.*, '087 patent at 2:57-60 ("High levels of polymer crosslinking . . . can be achieved by adding a crosslinking molecule to the monomer to produce a cross-linked co-polymer."). The '087 patent claims specify many requirements of the monomer's chemical structure. *Id.*

### B.    P2i's Pre-Suit Investigation

In 2018, years before P2i decided to bring suit, P2i conducted a pre-suit investigation into Favored. Specifically, P2i hired professional undercover investigators who entered Favored's facilities in Shenzhen, China. P2i's investigators represented themselves as potential customers to observe Favored's coating machines and coating process and captured pictures of the same. At the inspection and afterward, P2i's clandestine investigators estimated the chamber size of Favored's coating machine to be approximately 900 mm in diameter and 760 mm in height. McKeever Decl., Ex. 1 at P2I-004676-77 (Dkt. No. 134-2 at 4-5). In the course of discovery, P2i disclosed to Defendants a copy of the investigators' report with that finding highlighted in yellow. *See id.* The dimensions suggest that the machine observed – Favored's FT-35X machine – was too small to infringe the '070 patent; the FT-35X had a chamber size of 0.48 m$^3$ (height$*\pi*$[radius]$^2$ = 0.76 m$*(\pi*(0.45$ m)$^2$)), which is less than the 0.5 m$^3$ minimum required by the '070 patent's claims. *Id.*

Also in 2018, P2i used laboratory testing to try to identify the monomer and crosslinking reagent Favored used in its coatings to assess whether the coatings infringed the '087 patent. *See* McKeever Decl., Ex. 3 (Infringement Contentions, citing Exs. A17, A18). The testing revealed that the accused monomer used by Favored, however, lacked an aryl group, a component that was key to all claims of the '087 patent. *See* McKeever Decl., Ex. 6 (Dec. 19, 2024 letter citing Exs. A17-A18). The testing further revealed that the accused crosslinking reagent did not infringe the

crosslinking reagent specified in the '087 patent. *See* McKeever Decl., Ex. 5 (Dkt. No. 135-7) (Jan. 8, 2025 letter citing Exs. A17-A18).

### C.    P2i's Infringement Positions

P2i served its infringement contentions on December 6, 2024.  P2i's infringement allegations against every allegedly infringing product were based on P2i's 2018 undercover investigation of Favored and its pre-suit chemical testing.  *See, e.g.*, McKeever Decl., Ex. 2, Ex. A1 at 5-9 (Dkt. No. 135-5 at 20-24) (pictures from undercover investigation and chemical-testing results), Ex. A2 at 18-22 (Dkt. No. 135-5 at 33-37) (same), Ex. A3 at 31-35 (Dkt. No. 135-5 at 46-50) (same); *id.*, Ex. A17-A19 (Dkt. No. 135-5 at 56-68); *id.*, Ex. B1 at 215-19 (Dkt. No. 135-5 at 69-73) (citing undercover investigation at Ex. B33 at 473, and test results at Ex. B36 at 476-79).

On February 14, 2025, following P2i's production of the report from its undercover investigation, Defendants sent P2i's counsel a Rule 11 letter addressing the lack of a good-faith basis for P2i asserting infringement of the '070 patent.  McKeever Decl., Ex. 3 (Dkt. No. 136-4) (Feb. 14, 2025 letter).  Therein, Defendants advanced that Favored's machines could not infringe the '070 patent for at least two reasons.  First, Defendants presented that P2i's own evidence from 2018, which P2i highlighted in yellow, demonstrated that Favored's FT-35X's chamber was too small to meet the minimum plasma-zone size claimed in the '070 patent.  *Id.*  Defendants also identified Favored-produced documents that confirmed the chamber size was too small.  *Id.* Second, of the small subset of accused GN-related products that had been coated using Favored's technology, Defendants pointed out that the products had been coated using a different machine (the FT-36S) with a chamber size that was too small to infringe.  *Id.*  Defendants produced and identified in this letter the contract between Favored and the GN Audio affiliate that identified the exact machine to be used, and schematics of the machine pursuant to Patent Local Rule 3-4.  *Id.*

As for the '087 patent, Defendants sent two letters to P2i contesting any basis for asserting this patent.  Defendants sent the first letter on December 19, 2024, pointing out that Favored's coatings simply did not use the specific monomers claimed in the '087 patent.  McKeever Decl., Ex. 4 (Dkt. No. 135-6) (Dec. 19, 2024 letter).  Defendants sent their second letter on January 8, 2025, noting that P2i's infringement allegations were also baseless because Favored's coatings did

3

not use the claimed crosslinkers either.  McKeever Decl., Ex. 5 (Dkt. No. 135-7) (Jan. 8, 2025 letter).  P2i did not respond to these letters despite the parties' stipulation to do so by February 21, 2025.  Dkt. No. 120.  On the last day of the Rule 11 21-day safe harbor period following service of the draft motion, P2i moved to amend its complaint to drop the '087 patent.  Dkt. No. 130.

### D.    P2i's Litigation Conduct

On November 15, 2024, Defendants served their first set of interrogatories and requests for production on P2i, seeking basic discovery akin to that requested in every patent litigation.  On December 16, 2024, P2i served objections stating that P2i would not respond to the interrogatories or produce documents until the Court entered a protective order.  Patent L.R. 2-2 prohibits such withholding, providing: "Discovery cannot be withheld on the basis of confidentiality absent Court order.  The Protective Order authorized by the Northern District of California shall govern discovery unless the Court enters a different protective order."

P2i's Patent L.R. 3-2 document production was due on December 6, 2024.  Dkt. No. 102 at 11.  P2i failed to produce prosecution history records for the asserted patents as well as documents showing it owned the asserted patents and had the right to bring and maintain this lawsuit.  McKeever Decl. ¶ 3.  Rather than serving the required documents, on that date P2i produced a small batch of public documents downloaded from the Internet related to the accused products.  *Id.* ¶ 2.

Defendants sent P2i a letter on January 22, 2025, documenting P2i's failure to produce any documents required by Patent L.R. 3-2, including documents related to: (1) conception, reduction to practice, design, and development of the claimed inventions, (2) the file histories for the asserted patents; (3) documents related to purported ownership of the patents-in-suit, (4) technical and sales documents related to embodying products; (5) agreements and licenses related to the asserted patents.  McKeever Decl., Ex. 10.  P2i did not respond to Defendants' January 22, 2025 letter.  Defendants followed up by letters dated on January 28, 2025, February 1, 2025, and February 4, 2025.  *Id.*, Ex. 11.

Defendants filed a motion for judgment on the pleadings on January 24, 2025.  Dkt. No. 116.  On February 6, 2025, P2i asked Defendants for a two-week extension to respond to that

United States District Court
Northern District of California

motion.  McKeever Decl., Ex. 9.  During the subsequent meet and confer, the parties reached a stipulation in which Defendants agreed to a two-week extension in exchange for P2i's promise to: (1) produce all documents required by Patent L.R. 3-2 by February 14 (with the exception of some archived documents that would be produced as soon as possible); (2) supplement its responses and substantively respond to Defendants' first set of interrogatories by February 14, (3) begin a rolling production of documents responsive to Defendants' first set of requests for production; and (4) respond to Defendants' December 19, 2024 and January 8, 2025 letters regarding the '087 patent (Exs. 6, 7) by February 21.  The parties filed the stipulation and the Court granted it.  *See* Dkt. Nos. 119, 120.

P2i did not comply with its obligations enumerated in the Court-ordered stipulation.  First, P2i provided no responses to either of Defendants' two letters regarding P2i's frivolous infringement allegations for the '087 patent.  Second, while P2i made a small document production on February 14, 2025, few if any of the documents were relevant to the Patent L.R. 3-2 categories owed to Defendants months before.  McKeever Decl. ¶ 5.  P2i did not produce any conception and reduction to practice documents for the '070 patent or sufficient documents to establish they had standing in this case.  *Id.*  Third, P2i did not supplement its responses to Defendants first set of interrogatories by February 14 but instead served still-deficient supplemental responses more than two weeks later.  *Id.* ¶ 6.

On March 12, 2025 – more than three months after the Patent L.R. 3-2 documents were due – Defendants sent another letter requesting materials still unproduced: (1) any documents related to conception or reduction to practice of the claimed inventions (Patent L.R. 3-2(b)); (2) many documents related to the assignment or ownership of the asserted patents that were explicitly identified in P2i's documents, which related to P2i's standing to bring the suit (Patent L.R. 3-2(d) and (f)); and (3) documents related to the operation of P2i's claimed embodying products (Patent L.R. 3-2(e)).  McKeever Decl., Ex. 12.  The parties met and conferred on March 27, 2025, and P2i agreed to produce these documents.  P2i again failed to live up to its commitments.

On May 14, 2025, P2i served damages contentions as required by Patent L.R 3-8. McKeever Decl., Ex. 14. P2i's contentions sought lost profits without providing the justification required by Patent L.R. 3-8. Similarly, P2i failed to provide any support for its contention that a royalty rate of $0.05 to $0.25 should apply in the case. P2i claimed these rates were based on "public licensing data, industry practice, and currently available financial information," but P2i never produced any such documents though Defendants requested them in their requests for production. *See* McKeever Decl., Ex. 14. P2i also claimed that its own comparable licenses supported its damages theory, but again, P2i never produced any comparable licenses though Defendants had requested them in discovery. P2i further claimed damages for price erosion and convoyed sales without a factual basis in violation of the Patent Local Rules. Defendants detailed these deficiencies, and others, in these damages contentions in a letter to P2i dated May 27, 2025. *Id.*, Ex. 15.

On June 5, 2025, Defendants sent P2i a draft joint statement regarding a discovery dispute related to P2i's failure to produce any documents related to conception and reduction to practice on either of the asserted patents, and P2's failure to produce assignment and ownership documents. McKeever Decl., Ex. 13. The parties met and conferred again on June 9, 2025, wherein P2i again promised it would address the missing documents and provide its portion of the discovery letter brief but, once again, P2i did not do so. McKeever Decl. ¶ 4. Defendants again asked for P2i's insert for the discovery letter brief on June 16, 17, and 19, 2025. *Id.*, Ex. 14. Defendants filed their discovery letter brief on June 20, 2025, without P2i ever providing its insert. Dkt. No. 147. Later that same day, the Court found the letter moot because the Court had granted Defendants' motion for judgment on the pleadings on June 20, 2025. *See* Dkt. Nos. 148, 149.

### E.    Relevant Procedural History

P2i initiated this lawsuit by complaint filed April 7, 2023. Dkt. No. 1. Defendants moved to dismiss. Dkt. Nos. 25, 26. P2i filed an amended complaint, its first, as of right. Dkt. No. 38. Defendants moved to dismiss portions of the first amended complaint. Dkt. Nos. 40, 41. The Court granted those motions from the bench on January 4, 2024. Dkt. No. 56.

P2i filed its second amended complaint on February 5, 2024. Dkt. No. 65. Defendants again moved to dismiss portions of the second amended complaint. Dkt. Nos. 70, 71. The Court issued a written order granting those motions on September 24, 2024, dismissing with prejudice P2i's claims for trade secret misappropriation, induced infringement, contributory infringement, and willful infringement. Dkt. No. 85.

Defendants answered the remaining portions of the second amended complaint on October 22, 2024. Dkt. Nos. 86, 87. A few days later, on November 4, 2024, Defendants moved for an award of attorney's fees and costs under Section 1927 related to having to respond to P2i's deficient pleadings multiple times and for having to translate the Chinese-language prospectus P2i claimed supported the timeliness of its trade secret claims. Dkt. No. 90. Defendants then filed a motion for judgment on the pleadings, challenging the patentability of the '070 patent, on January 24, 2025. Dkt. No. 116. P2i moved to stay discovery pending resolution of the motion for judgment on the pleadings, Dkt. No. 123, which the Court denied without hearing, Dkt. No. 127.

On April 16, 2025, Defendants gave notice that all of the patent claims underlying P2i's assertion of infringement on the '087 patent had been invalidated through inter partes review by the Patent Trial and Appeal Board. Dkt. No. 129. P2i moved for leave to file an amended complaint on April 18, 2025, proposing to excise the '087 patent from the suit and proceed only as to the '070 patent. Dkt. No. 130.

The Court set the motions for Section 1927 attorney's fees and for judgment on the pleadings to both be heard on May 1, 2025. Defendants filed a motion for sanctions under Federal Rule of Civil Procedure 11 on April 29, 2025. Dkt. No. 136. At the May 1, 2025 hearing, Defendants suggested that the Court defer consideration of the Section 1927 motion for attorney's fees to be heard alongside the Rule 11 motion, and the Court agreed. The Court granted the motion for judgment on the pleadings, invalidating the '070 patent, on June 20, 2025. Dkt. No. 148. The Court denied P2i's April 18 motion for leave to amend as moot. *Id.*

The Court heard the motions for Section 1927 attorney's fees and for Rule 11 sanctions on August 29, 2025. Dkt. No. 154. Defendants again asked the Court to pocket one of the motions,

this time the Rule 11 motion, because they anticipated filing a further, overlapping motion for attorney's fees.  The Court agreed and did not rule on the Rule 11 motion.  The Court denied the Section 1927 motion as procedurally defective, but it imposed a sanction of $42,531.55 under the Court's inherent authority, finding that P2i's counsel exhibited bad faith in the failure to properly translate and disclose the Chinese-language prospectus on which P2i relied to establish the timeliness of its trade secret claims.  The Court thereafter dismissed P2i's '087 patent infringement claim with prejudice and closed the case.  Dkt. No. 155.  P2i has since appealed to the Federal Circuit.  Dkt. No. 162.

## II.      DISCUSSION

Although the Rule 11 motion remains live for the Court's decision, this order focuses on Defendants' motion for an award of attorney's fees based on this being an "exceptional" patent case.[1]  *See* 35 U.S.C. § 285; Dkt. No. 168.  The Court considers whether this represents an exceptional case and then addresses whether additional sanctions are appropriate pursuant to the Court's inherent authority.

### A.      "Exceptional" Case

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  Under the statute, there are two basic requirements: (1) that the party seeking fees is a "prevailing party"; and (2) that the case is "exceptional."  An "exceptional" case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  Courts consider "the totality of the circumstances" when deciding whether a case is "exceptional."  *Id.*  In making the determination, courts may consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.* at 554 n.6 (quotation marks and citation omitted).  Under

---

[1] Indeed, the facts underlying both motions are substantively the same, such that Defendants would only be entitled to a single award of fees under either motion.

United States District Court
Northern District of California

this test, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* at 555. "In *Octane Fitness*, the Supreme Court made clear that it is the 'substantive *strength* of the party's litigating position' that is relevant to an exceptional case determination, not the *correctness* or eventual success of that position." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) (citation omitted, emphasis in original). There is no precise rule or formula for determining whether to award attorney's fees, but instead equitable discretion should be exercised in light of the above considerations. *Octane Fitness*, 572 U.S. at 554 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)); *see also Blackbird Tech LLC v. Health In Motion LLC*, 944 F.3d 910, 914 (Fed. Cir. 2019). An exceptional case determination must find support in a "preponderance of evidence." *Octane Fitness*, 572 U.S. at 557-58.

"Losing, in itself, does not make a case exceptional. More is required." *Finjan, Inc. v. Juniper Network, Inc.*, No. C 17-05659 WHA, 2021 WL 75735, at *2 (N.D. Cal. Jan. 9, 2021) (Alsup, J.). Indeed, courts do not award attorney's fees as "a penalty for failure to win a patent infringement suit." *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017) (quoting *Octane Fitness*, 572 U.S. at 548). "The legislative purpose behind § 285 is to prevent a party from suffering a 'gross injustice,' " rather than to punish a party for losing. *Checkpoint Sys.*, 858 F.3d at 1376; *see also Vasudevan Software, Inc. v. Microstrategy, Inc.*, No. 11-cv-06637-RS, 2015 WL 4940635, at *5 (N.D. Cal. Aug. 19, 2015) ("[O]ther courts in this district have suggested that merely taking an aggressive stance while positing stretched or unsuccessful infringement theories does not, without more, warrant fee-shifting.").

Here, P2i does not resist the first element of the Section 285 analysis – Defendants clearly prevailed in this case, having achieved dismissal of several claims at the pleading stage, judgment on the pleadings as to the remaining claims premised on the '070 patent, and dismissal with prejudice as to the remaining claims premised on the '087 patent. *See Future Link Sys., LLC v. Realtek Semiconductor Corp.*, 154 F.4th 1370, 1377 (Fed. Cir. 2025) (holding that a defendant was the prevailing party following voluntary dismissal of patent infringement claims). The inquiry thus centers on whether P2i's initiation of this lawsuit and litigation conduct rise to the

United States District Court
Northern District of California

level of "exceptional" to merit an award of attorney's fees to Defendants.  There are three main bases on which Defendants aver that this case is an exceptional one in which an award of attorney's fees is appropriate: (1) P2i's infringement positions as to the '070 patent, (2) P2i's infringement positions as to the '087 patent; and (3) P2i's litigation conduct.  The Court examines each in turn.

### 1.    P2i's Infringement Positions as to the '070 Patent

In February 2025, Defendants sent a letter to P2i explaining that Favored's machines could not infringe the '070 patent.  *See* McKeever Decl., Ex. 8 (Feb. 14, 2025 letter).  The letter followed P2i's production of materials from P2i's presuit investigation into the purported patent infringement, including a 2018 "Weipin Report."  The Weipin Report recounted a visit by professional undercover investigators, hired by P2i, who posed as potential customers to observe Favored's coating machines and coating process in Favored's facilities in Shenzhen, China.  Within the Weipin Report, P2i's clandestine investigators estimated the chamber size of Favored's coating machine to be approximately 900 mm in diameter and 760 mm in height.  McKeever Decl., Ex. 1 at P2i-004676-77 (Dkt. No. 134-2 at 3-4).  These estimated dimensions would provide a chamber size of 0.48 m$^3$ (height*$\pi$*[radius]$^2$ = 0.76 m*($\pi$*(0.45 m)$^2$)), which is less than the 0.5 m$^3$ minimum required by the '070 patent claims.  Significantly to Defendants, the Weipin Report was produced in discovery with the sentence estimating the chamber size highlighted in yellow.  *See* Mot. at 4; *see also* Ex. 1 at P2i-004677.

The relevant passage recounting the investigators' observation states that Favored's employee

> introduced that the coating machine was 2.9 meters long, 2.15 meters high and 1.6 meters wide, . . . and the gas compartment was one meter high and one meter in diameter.  However, based on our investigator's visual estimation, the gas compartment should be 900mm in diameter and 760mm high.

Ex. 1 at P2i-004676-77 (highlighted as portrayed in exhibit).  P2i avers that the sentence from the Weipin Report emphasized by Defendants must be read in context and asserts that its infringement contentions in this case explicitly relied on the measurement described by Favored's employee (1m x 1m), which results in a volume (0.79 m$^3$) that exceeds the minimum set (0.5 m$^3$) by the

United States District Court
Northern District of California

relevant claim in the '070 patent.  P2i repeats an argument it raised in correspondence with Defendants: that Defendants "never explain why one set of values in the Weipin Report should be credited while another set (in the same report) should not."  Dkt. No. 183 at 14 (citation to record omitted).  P2i's reliance on the 1m x 1m measurement might not be entirely unreasonable as a basis to assert that Favored's machines infringed the '070 patent as P2i understood it prior to suit. The Court will accordingly decline Defendants' request for sanctions in the form of fees related to the '070 patent from the outset of the litigation.

P2i further argues that, even if its reliance on the 1m x 1m estimate was not credited, the claims of its '070 patent allow for rounding – that the $0.48m^3$ estimate of gas compartment capacity from the Weipin Report rounds up to $0.5m^3$ and thus there was some basis to bring its claim.  P2i asserts that despite the claims expressly requiring the plasma zone to be "at least 0.5 $m^3$" the claims should be interpreted to extend to volumes less than 0.5 $m^3$.  P2i explained in an April 18, 2025 email, "[t]he claims [of the '070 patent] do not require a chamber size of 0.50 $m^3$. They recite a zone having 'a volume of at least 0.5 $m^3$.'  The difference is (highly) significant." Reinitz Decl., Ex. A-3 at 1 (ECF 141-4 at 1).  Because "the claim recites only one significant digit (0.5 $m^3$)" P2i posits through counsel's declaration, "the relevant [Person of Ordinary Skill in the Art] would have rounded 0.48 $m^3$ to 0.5 $m^3$" and, "[a]t minimum, Plaintiff's position – that 0.48 $m^3$ (which rounds to 0.5 $m^3$) fell within the scope of the '070 Patent's claims – was not unreasonable (let alone sanctionable)."  *Id.*  In support of this rounding proposition, P2i cited in its correspondence *Actelion Pharms. LTD v. Mylan Pharms. Inc.*, 85 F.4th 1167, 1171 (Fed. Cir. 2023), in which the Federal Circuit held "there is no blanket rule that ranges, or specifically open-ended ranges, must foreclose rounding."  Reinitz Decl., Ex. A-3 at 1.  Defendants attack this rounding theory as only recently devised and presented in April 2025, two years after initiation of the lawsuit and in response to a draft motion for Rule 11 sanctions, a contention not resisted by P2i.  *See* Mot. at 10.  Moreover, the *Actelion Pharmaceuticals* opinion came out in November 2023 and accordingly cannot serve as a theoretical basis for infringement-by-rounding that animated P2i's April 2023 initiation of this lawsuit.  Given the late timing of P2i's presentation of this rationale and P2i's repeated failure to offer any factual support for the premise that "the

United States District Court
Northern District of California

relevant [Person of Ordinary Skill in the Art] would have rounded 0.48 m$^3$ to 0.5 m$^3$[,]" the Court cannot credit the rounding theory as a good faith basis for P2i's infringement contentions.  Reinitz Decl., Ex. A-3 at 1 (ECF 141-4 at 1).

Further, Defendants aver P2i failed to identify any accused product coated with an FT-35X machine.  Rather, the subset of accused products that were coated using Favored's technology were coated using a machine that is even smaller than the FT-35X machine that P2i and its investigators knew did not infringe.  The contract between Favored and GN Audio's affiliate is unambiguous: the products were to be coated using Favored's FT-36S machine.  *See* McKeever Decl., Ex. 8 (DEFS_P2I_FTU_0001147) at 1150 (" 'Equipment': means the nano-coating equipment (model: FT-36S)").  The FT-36S machine has a total volume of only 99 liters, or 0.099 m$^3$, and thus is several times smaller than the minimum 0.5 m$^3$ gas compartment size required by P2i's '070 patent claims.  *See* McKeever Decl., Ex. 9 (DEFS_P2I_FTU_0002710).  Defendants aver that P2i knew since delivery of a February 14, 2025 letter to counsel that the claims premised on the '070 patent were illegitimate because, in part, the letter identified,

> Defendants have confirmed that the only Favored machine that has been used to coat any of the accused products is the much smaller FT-36S machine.  *See, e.g.*, DEFS_P2I_FTU_0001147 at 1150 (" 'Equipment': means the nano-coating equipment (model: FT-36S)").  That machine has a total volume of only 99 liters, or 0.099 m$^3$, *see, e.g.*, DEFS_P2I_FTU_0002710, and thus could not possibly have a plasma zone anywhere near the 0.5m$^3$ minimum required. Thus, none of the accused products were coated by a machine with a large enough plasma zone to infringe the '070 patent and P2i has never had any basis to allege otherwise.

Ex. 3.  Defendants further provided P2i with the schematics of the coating machines they use in the course of discovery, and those schematics confirmed what P2i's investigators concluded back in 2018, that the chamber in Favored's FT-35X machines were too small to infringe.  *See* Ex. 6 (DEFS_P2I_FTU_0000166), Ex 7 (DEFS_P2I_FTU_0002848) (noting the chamber area in which plasma is produced has a diameter of 946 mm and a height of 635 mm, producing a total volume of 0.44m$^3$).

P2i argues that these are claim construction issues inappropriate for resolution on a post-judgment fee petition.  *See* Dkt. No. 183 at 17-18.  However, as with its rounding theory discussed

12

above, P2i still fails to adduce any factual support for its positions regarding infringement of the '070 patent. P2i avers that it has offered evidence supporting its position as to Defendants' potential infringement of the '070 patent, namely, P2i's reasoning in a letter to Defense counsel dated April 18, 2025, "[t]he claims [of the '070 Patent] do not require a chamber size of 0.50 $m^3$. They recite a zone having 'a volume of at least 0.5 $m^3$.' " Dkt. No. 183 at 12 (quoting Dkt. No. 141-4 at 1). But this "rounding" assertion, proffered solely as attorney argument through multiple briefing opportunities, *see, e.g.*, Dkt. No. 141, Dkt. No. 179, falls well short of the factual support necessary to demonstrate P2i had a good faith basis to assert infringement of the '070 patent.

In sum, record evidence demonstrates that P2i lacked a reasonable basis to maintain its infringement position as to the '070 patent even if the Court accepts that P2i held a reasonable basis for initiating the lawsuit – reliance on the 1m x 1m measurement from the Weipin report. P2i's continued position regarding infringement of the '070 patent certainly became unreasonable in light of the evidence and Defendants' correspondence. The lack of factual support for P2i's assertions of infringement of the '070 patent thus establishes this as an exceptional case under Section 285 in which Defendants are entitled to an award of their fees – at least as to the time they spent defending the claims premised on that patent.

### 2.    P2i's Infringement Positions as to the '087 Patent

Failing to conduct an adequate pre-filing inquiry weighs heavily in support of a finding of exceptionality. *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1307 (Fed. Cir. 2017) (affirming a finding of exceptionality based in part on a finding that plaintiff "failed to perform a diligent pre-suit investigation"). Here, P2i's pre-suit investigation involved laboratory testing that confirmed Favored's coating lacked both the monomer and crosslinker required to infringe the '087 patent. *See* McKeever Decl., Ex. 7 (Dkt. No. 168-7) (letter from defense counsel describing in detail the distinctions between P2i's pre-suit testing results and the claims of the patent).

Starting with the monomer, the '087 patent claims require a monomer that has "aryl optionally substituted by halo." P2i agreed with Defendants that the "plain and ordinary meaning" of that language is "an aromatic hydrocarbon ring in which at least one hydrogen atom is

optionally replaced with fluorine, chlorine, bromine, and/or iodine." Joint Claim Construction Statement (Dkt. No. 144) at 2. According to P2i's own laboratory testing, however, Favored's coating does not use the claimed monomer with "aryl optionally substituted by halo" – the accused monomer does not match the patent claims. *See* Dkt. No. 168-7. Through several letters sent to P2i's counsel as well as in their Rule 11 motion, Defendants described how the testing results showed that the accused products did not infringe the claims of the '087 patent, detailing the specific allegations made and the specific evidence cited in P2i's infringement contentions. *See* Dkt. No. 136 at 11-14. Defendants wrote to P2i that, based on P2i's own evidence, the accused monomer and accused cross-linker did not satisfy the structural requirements in the asserted claims. *Id.*; *see also* Dkt. No. 168 at 25-27. Similarly, P2i's pre-suit testing revealed that the crosslinking reagent used in Favored's coating does not fall within either of the two classes of molecules identified in the '087 patent. *See* Dkt. No. 136 at 18-19; Dkt. No. 168 at 27-28. Defendants showed in the letter, again based on P2i's own evidence, the crosslinking reagent did not satisfy the requirements of the asserted claims. *See* Dkt. No. 168-7.

P2i fails to meaningfully address these points in either the Rule 11 or the Section 285 context. In its opposition to the Section 285 motion, P2i responds that its pre-suit testing results demonstrate that the tested coatings have "an equivalent chemical structure" to the monomer compound and crosslinking reagent described in the patent. *See* Dkt. No. 183 at 16-17. P2i fails, however, to offer any explanation as to how "equivalent" or "comparable" chemical structures plausibly establish that Defendant's coatings infringed the '087 patent or that such equivalencies were close enough to support a good faith belief of infringement at the time of suit. At the hearing, P2i's counsel resisted confirming that "equivalent" or "comparable" chemical structures show the accused coatings sufficiently identical to infringe the '087 patent.

P2i further asserts these issues represent "quintessential claim construction . . . issues" on the '087 patent and that the infringement issue "could only be conclusively resolved via claim construction." Dkt. No. 183 at 12. But given P2i's continued failure to respond to Defendants' contentions or present a single iota of countervailing factual support for its infringement contention, P2i's assertion that these issues cannot be resolved absent claim construction fails to

14

persuade. *Cf. In re PersonalWeb Techs., LLC et al., Patent Litig.*, 2020 WL 5910080, at \*4 (N.D. Cal. Oct. 6, 2020) (Freeman, J.) ("[C]ourts in this district tend to award fees when a plaintiff persists with a clearly untenable claim, or adduces no evidence in support of its position."). Indeed, P2i's pre-suit testing results demonstrate that the accused products did not infringe the '087 patent.

As with the '070 patent discussed above, Defendants have repeated this argument through multiple rounds of briefing, identifying the defects in P2i's disclosures. P2i again fails to adduce any facts in support of its position regarding infringement of the '087 patent. The record thus establishes that P2i lacked a good faith factual basis to bring suit based on the '087 patent, and therefore, this case represents an exceptional case in which Defendants are entitled to at least a partial award of their attorney's fees defending those claims premised on the '087 patent.

### 3. Litigation Conduct

Defendants argue that P2i's litigation conduct, on its own, warrants an award of attorney's fees. *See, e.g.*, Dkt. No. 167 at 30-31. Some courts have found that a party's litigation conduct, including conduct related to compliance with deadlines and discovery obligations, contributes to a patent case's designation as exceptional in assessing an award of attorney's fees. For example, district courts have relied on a patentee's failure to produce important certain conception documents required under the court's patent local rules to find the case exceptional under Section 285. *Adaptix, Inc. v. Alcatel-lucent USA, Inc.*, No. 6:12-CV-22, 2016 WL 6915309, at \*5 (E.D. Tex. Mar. 18, 2016); *see also Logic Devices, Inc. v. Apple Inc.*, No. C 13-02943 WHA, 2014 WL 6844821, at \*4 (N.D. Cal. Dec. 4, 2014) (noting as support for exceptional case finding that plaintiff had "failed to comply with several patent local rules"). On the other hand, courts have found that discovery deficiencies, including a failure to timely produce information that caused the opponent to incur unnecessary costs, do not necessarily establish the case as "exceptional" under Section 285. *Pac. Coast Bldg. Prods., Inc. v. CertainTeed Gypsum, Inc.*, No. 18-CV-00346-LHK, 2021 WL 75755, at \*6 (N.D. Cal. Jan. 7, 2021).

P2i's failures to abide by the Patent Local Rules (as well as P2i's own discovery production commitments negotiated with Defendants) are thoroughly described in the fact section

United States District Court
Northern District of California

United States District Court
Northern District of California

above.  P2i does not address these or even attempt to rebut its shortcomings, it simply argues that these deficiencies do not make the case exceptional.  But P2i's litigation of this patent case for more than two years without producing some of the most basic categories of patent litigation documents renders this case exceptional.  P2i failed to produce foundational materials, including (1) conception and reduction to practice documents that would show that P2i actually invented anything, and (2) complete assignment and ownership documents sufficient to confirm P2i had the standing to bring this case in the first place.  Additionally, P2i repeatedly rebuffed Defendants' express requests for the documents.  This conduct, which reached beyond non-compliance with the Patent Local Rules, marks Plaintiff's counsel's litigation conduct as something more than a mine-run patent case.  The repeated failures to comply with stipulated deadlines reached through negotiations with opposing counsel cannot be countenanced.  Plaintiff's counsel's litigation habits weigh in favor of finding this an exceptional case in which Defendants are entitled to an award of fees on the patent claims.

### 4.     "Exceptional" Case Conclusion

Analyzing the totality of circumstances, including the weakness of P2i's infringement positions, the preponderance of evidence presented by Defendants demonstrating that P2i possessed evidence undermining its infringement claims, P2i's failures to comply with the Patent Local Rules as well as its own litigation commitments, and the parties' repeated arguments before the Court, the Court finds this to be an exceptional patent case in which Defendants are entitled to an award of their attorney's fees pursuant to Title 35 U.S.C. § 285. *See Octane Fitness*, 572 U.S. at 554.  The Court does not reach this conclusion merely because P2i lost.  Rather, P2i exhibited subjective bad faith by pursuing these patent infringement claims in the face of evidence it possessed prior to suit, and P2i failed to present any countervailing evidence when confronted by Defendants, nor in opposing Defendants' instant motions before the Court.  The facts of this case and the way it was litigated make it an exceptional one.  The Court will award attorney's fees to Defendants.

**B.      Inherent Authority**

Defendants alternatively request an award of attorney's fees pursuant to the Court's inherent authority. *See* Dkt. No. 168 at 8-9. In addition to fees available under Section 285, a court has the inherent power to assess attorney's fees for "willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. . . ." *Roadway Express v. Piper*, 447 U.S. 752, 766 (1980) (internal quotation marks and citations omitted). A specific finding of bad faith or conduct tantamount to bad faith is required for inherent power sanctions. *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). Bad faith conduct includes willful actions, such as "recklessness when combined with an additional factor, such as frivolousness, harassment, or an improper purpose." *Id.* "[S]anctions should be reserved for the 'rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.' " *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (citation omitted). Indeed, due to their potency, "inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

Here, the Court does not rehash the propriety of an award of attorney's fees given the preceding analysis concluding that this is an exceptional patent case. The Court finds that the same conduct, including infringement positions contrary to factual evidence in P2i's possession over the course of the suit as well as P2i's counsel's dilatory litigation practices, constitutes bad faith warranting sanctions. One act beyond these, however, deserves particular attention. At the pleading stage, P2i proffered a Chinese-language document for the premise that it learned of alleged trade secret misappropriation within the limitations period based on a September 2021 Chinese-language prospectus. *See* Second Am. Compl. ¶¶ 77, 224-25, 228-29, 232-40. Defendants had the document translated at significant expense and found that the document did not stand for the premise asserted. *See generally* Reply Br. (Dkt. No. 79). Defendants sought an award of sanctions to recover the cost of translation, which the Court granted from the bench during a hearing on August 28, 2025. *See* Dkt. No. 154; *see also* Dkt. No. 158 (Hrg. Tr.). In imposing a sanction against P2i in the amount of $42,531.55, the Court found, "P2i's reliance on

the prospectus, failing to provide a pin site for the 400-page document and compelling the Defendants to incur the expense of translating it from Chinese when the document didn't stand for the premise advanced by P2i, amounts to recklessness combined with frivolous[ness] and thus constitutes bad faith." Dkt. No. 158 at 15. P2i disclosed during the hearing that the translation it obtained and relied upon "was a machine translation" that had been created using "a computer translation application." *Id.* at 11. The Court finds that this use of an unverified, translated document to advance a foundational premise in the case amounts to recklessness combined with frivolousness and thus constitutes bad faith. The Court thus exercises its inherent authority to grant Defendants an award of attorney's fees for the time they spent working on this issue as well, to the extent they can present records demonstrating time focused on responding to P2i's bad faith argument.

### C.    Amount of Fees

To assess the reasonableness of requested attorney's fees, trial courts look to the lodestar amount, which is presumptively reasonable. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Vogel v. Harbor Plaza Center, LLC*, 893 F.3d 1152, 1161 (9th Cir. 2018). The lodestar calculation requires examination of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986). "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

The reasonable hourly rate is determined by "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), amended on other grounds, 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stetson*, 465 U.S. 886, 895 n.11 (1984)). The relevant community is typically the forum in which the district court sits; in this case, the relevant community is the Northern District of California. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The prevailing market rate is guided by attorney affidavits as well as "decisions by other courts awarding similar rates for work in the same geographical area by

18

attorneys with comparable levels of experience." *Trujillo v. Orozco*, No. 17-CV-00566-EJD, 2018 WL 1142311, at *2 (N.D. Cal. Mar. 2, 2018); *see also United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

The number of hours is based only on the amount of time "reasonably expended on the litigation" and excludes "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433-34. The moving party bears the initial burden of providing relevant documentation. *Id.* at 433. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* Furthermore, while the lodestar amount provides guidance, "[t]here is no precise rule or formula for making these determinations." *Id.* at 436. A court "necessarily has discretion in making this equitable judgment." *Id.* at 437.

Here, Defendants submitted a handful of declarations in support of their motions for sanctions and fees. *See, e.g.*, McKeever Decl. (Dkt. No. 167-4). Therein, they identify the attorneys who worked on the case, their billing rates, the total hours each spent working on the case, and some of their qualifications and experience. *Id.* However, Defendants' failure to provide any more detailed records prevents the Court from assessing the reasonableness of the hours spent. The Court accordingly invites counsel to submit detailed billing records for their requested fees.

The Court invites Defendants' counsel to submit supplemental billing records in the following chart format:

| Date | Hours Billed | Timekeeper | Billing Entry Description | Category |
|---|---|---|---|---|
| [date] | [hours] | [name] | [description] | [e.g., motion to dismiss 1; reply in support of Rule 11 motion] |

Defendants' counsel's supplemental records, along with evidence supporting the reasonableness of their claimed hourly rates, shall be submitted within 21 days from the date of this order. Within seven days of such supplemental filings, P2i may file an objection, if any, not to exceed five pages.

United States District Court
Northern District of California

**III.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' motion.  The Court finds this an exceptional case under Title 35 U.S.C. § 285 and concludes that Defendants are entitled to an award of attorney's fees, and the Court finds that P2i's bad faith litigation conduct is an additional reason Defendants are entitled to an award of fees.  The Court does not now specify the amount of the attorney's fees owed and will instead determine the appropriate award after consideration of Defendants' attorney's billing records and evidence supporting the reasonableness of their claimed rates.

**IT IS SO ORDERED.**

Dated: March 27, 2026

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**